No. 50,126

In The Matter of The Due Process Hearing of Jessie Mae Gillett, *Appellee,* v. Unified School District No. 276, Jewell County, Kansas, *Appellant.*

(605 P.2d 105)

Opinion filed January 19, 1980.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause and was on the briefs for the appellant.

*Rodney G. Nitz,* of King, Stokes, Knudson, and Nitz, Chartered, of Salina, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This case involves a controversy between a school

teacher and school board over the nonrenewal of her teaching contract. Unified school district No. 276 appeals from a judgment of the district court reversing the school board's decision not to renew the teacher's employment contract. The trial court ordered the teacher to be reinstated with back pay.

The facts in the case are not greatly in dispute and essentially are as follows: Unified school district No. 276 is located in Jewell County. Jessie Mae Gillett is a tenured teacher who had been continuously employed by the school district for a period of seven years. Her last term of employment covered the 1976-77 school year. On March 11, 1977, the school board delivered to Mrs. Gillett a notice of nonrenewal of her teaching contract for the following year pursuant to K.S.A. 1977 Supp. 72-5437. The notice, which was contained in a letter from the president and clerk of the school board, was in the form required by statute. The reason given for nonrenewal was the existence of criminal charges of shoplifting pending against Mrs. Gillett in Hastings, Nebraska. Mrs. Gillett promptly filed a request for a due process hearing in the matter. On May 5, 1977, the board served on the teacher a notice which contained a supplemental list of reasons for nonrenewal including the following:

1. Inability to properly handle school funds;
2. Excessive absences from teaching school duties for allegedly being ill;
3. Improper use of sick leave;
4. Physical and mental instability; and
5. Loss of community, student, and school board respect for this teacher.

Mrs. Gillett, through her counsel, objected to the consideration of the supplemental reasons contending they were not timely served. The hearing committee overruled the objection, stating that it would consider the supplementary reasons.

On September 21, 1977, a full evidentiary hearing was held by the hearing committee in Mankato. The committee heard evidence pertaining to both the original reason and the supplemental reasons for nonrenewal. The evidence presented at the hearing will be summarized in detail later in the opinion. At this point, it is sufficient to state that the evidence disclosed that the teacher had been charged in Adams County, Nebraska, district court in Hastings in two separate cases for the offense of shoplifting. One

incident occurred on October 16, 1976, when Mrs. Gillett took two articles from Gibson's shopping center in Hastings. The other incident occurred on November 17, 1976, when Mrs. Gillett took an article from the Safeway store. In regard to those charges, the committee heard the testimony of Mrs. Gillett's psychiatrist, Dr. Dale Peters, who was called as a witness by the teacher. He testified that she had a metabolism disorder, triggered by certain foods, which resulted in periodic alterations in her state of consciousness. His testimony tended to show that the two shoplifting episodes occurred when Mrs. Gillett was in such an altered state of consciousness, that at the time she was unable to control her actions, and that she was, therefore, incapable of forming any criminal intent. At the time of the hearing, the criminal charges were still pending but had been continued in order to provide Mrs. Gillett with an opportunity to obtain psychiatric and medical treatment. Other evidence was introduced pertaining to the supplemental reasons for nonrenewal.

The testimony presented at the hearing was transcribed, and counsel were afforded an opportunity to file briefs with the hearing committee. On January 24, 1978, the hearing committee entered its order recommending by a two-to-one vote that the school board reverse its decision of nonrenewal for the reason that there was insufficient evidence to support the charges. In its findings, the committee found that the school board had failed to show that the pending charges had any harmful effect on the community, the faculty, or the students. The committee further concluded that there was insufficient evidence to show a loss of student respect or of ineffectiveness of the teacher or to establish the supplemental charges.

The recommendation of the hearing committee was delivered to the school board, which considered all of the evidence presented in the case together with arguments and briefs of counsel. The board unanimously decided to follow its previous decision of nonrenewal of Mrs. Gillett's contract. The board made no findings of fact and gave no specific reason in writing for rejecting the committee's recommendation. Mrs. Gillett then appealed the school board's decision to the district court, using K.S.A. 60-2101(d) as required by K.S.A. 1977 Supp. 72-5443. The district court reviewed the transcript of the evidence presented at the due process hearing and heard arguments of counsel. The district

court entered judgment in favor of Mrs. Gillett, ordering her reinstated with back pay. As a part of the journal entry of judgment, the trial court made findings of fact including the following:

10. The court finds that the supplemental reasons for nonrenewal should not have been considered by the hearing committee since they were filed subsequent to March 15, 1977, and contained nothing which was not known or should have been known on March 15, 1977.

11. That the scope of review by this court should be confined to the reason given for the petitioner's nonrenewal as contained in the notice of March 11, 1977.

12. The court finds that the nonrenewal of the petitioner by the Board of Education is an act that is within the authority of the board.

13. The court finds that the respondent did not act in a fraudulent or capricious manner. The board's conduct might be arbitrary only to the extent of not following the hearing committee's decision. That the Board of Education's not following the recommendation of the hearing committee's recommendation is not in and of itself an arbitrary act.

14. The court finds that the respondent failed to present substantial evidence to support their reason for nonrenewal.

15. The court further finds that had the court considered the supplemental reasons for nonrenewal, it would have found that the board had also failed to present substantial evidence to support nonrenewal for any of the supplemental reasons given.

Following entry of judgment by the district court, the school board appealed to this court. The school board raises two points of claimed error:

1. The district court erred in holding that there was no substantial evidence to uphold the school board's decision to nonrenew the teacher's employment contract.

2. The trial court erred in holding that the hearing committee had improperly considered the school board's supplemental reasons for nonrenewal submitted to the teacher on May 5, 1977.

The teacher has filed a cross-appeal, claiming that the district court erred in holding that the board did not act in an arbitrary,

fraudulent, or capricious manner in refusing to follow the recommendations of the hearing committee.

Before considering the evidence, it would be helpful to review certain basic concepts and principles of law pertaining to the termination of employment contracts of tenured teachers and the due process procedure provided for by K.S.A. 1977 Supp. 72-5436 *et seq.* At the outset, it should be stated that the dismissal of teachers and the nonrenewal of their teaching contracts is sometimes a complex, difficult process with serious implications. Because of the fact that, under the statutory procedures, the dismissal or nonrenewal of a teacher requires a long and time-consuming effort, school administrators and boards of education are often reluctant to institute such procedures against teachers who ought to be dismissed. As a result the students suffer in the quality of their education. On the other hand, teachers at times in the past have not been fairly treated and have been dismissed or nonrenewed without good reason. As a result of the due process procedure established by the legislature in 1974, teachers are now seeking and being afforded protection of their rights by the courts. In determining cases involving the dismissal or nonrenewal of a teaching contract, the courts are obligated to consider the rights of the teacher, the rights of the school board, and the rights of the school children to receive a quality education in a proper school atmosphere. In every such case, the challenge presented to the court is to provide a decision, fair and equitable both to the teacher and to the school board, with a minimum amount of disruption of the educational opportunity for the children. See Jacobsen, Sperry, & Jensen, *The Dismissal & Non-Reemployment of Teachers,* 1 J. L. & Educ. 435 (1972).

Statutes providing protection for at least some tenured teachers from unjust dismissal have been in existence in Kansas for many years. Teachers and other professional employees, employed in public school systems in cities having a population of 120,000 inhabitants or more, were provided tenure by statute in 1937 (G.S. 1949, 72-5401 *et seq.*). In *Million v. Board of Education,* 181 Kan. 230, 310 P.2d 917 (1957), the purpose of the Tenure of Instructors Act (G.S. 1949, 72-5401 *et seq.*) was stated to be as follows:

"The evident purpose of the Tenure of Instructors Act (G.S. 1949, Chapter 72,

Art. 54) is to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind—political, religious or personal, and secure for them teaching conditions which will encourage their growth in the full practice of their profession, unharried by constant pressure and fear, but it does not confer special privileges or immunities upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system; and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers Boards of Education to discharge them for *just cause* in an orderly manner by the procedures specified." (Syl. ¶ 1.) (Emphasis supplied.)

K.S.A. 72-5401 through 72-5409 were repealed in 1974. At that time, the legislature enacted K.S.A. 1977 Supp. 72-5436 *et seq.*, as a comprehensive due process procedure covering the termination or nonrenewal of teacher's contracts in every school district, area vocational-technical school, and community junior college in the state. It is clear to us that the statutory scheme to provide tenure for all school teachers throughout the state has the same purpose as that of the Tenure of Instructors Act which is discussed in *Million.*

If the courts are to carry out the legislative purpose of the teacher tenure statutes, they must require a board of education to show good cause in order to justify the dismissal or nonrenewal of a tenured teacher. The requirement of good cause is inherent in the statutory scheme created by K.S.A. 1977 Supp. 72-5436 *et seq.* 72-5437 provides that all contracts of employment of teachers shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served. A written notice of intent to nonrenew a contract must be served by a board upon any teacher on or before the fifteenth day of March. In passing, it should be noted that the date for notice of nonrenewal was changed in 1978 to require the written notice of the school board's intent to nonrenew a contract must be served upon the teacher on or before the fifteenth day of *April* (K.S.A. 1979 Supp. 72-5437). 72-5438 requires the written notice of nonrenewal to include:

1. A statement of the *reasons* for the proposed nonrenewal or termination, and
2. A statement that the teacher may have the matter heard by a hearing committee.

Under 72-5439, specific procedural due process requirements are set forth including the right to an orderly hearing and the right of the teacher to a fair and impartial decision based on *substantial*

evidence. It should be noted that 72-5439(*d*) affords to the board the right to present its testimony and give *reasons* for its actions, rulings, or policies. 72-5442 places the burden of proof upon the school board in all instances other than where the allegation is that the teacher's contract is nonrenewed by reason of the teacher's exercise of a constitutional right. 72-5443 requires the hearing committee to render a written recommendation, setting forth its findings of fact. The recommendation of the hearing committee is required to be submitted to the teacher and to the board. The board, after considering the hearing committee's recommendation and hearing arguments, decides whether the teacher's contract shall be renewed or terminated. The decision of the school board is final, subject to appeal to the district court as provided by K.S.A. 60-2101.

This summary of the applicable statutes has been provided to make it clear that the purpose of the due process hearing is to inquire into the reasons for the dismissal or nonrenewal of the teacher and to determine whether or not the evidence presented establishes good cause within the spirit and purpose of the teacher tenure statutes. The Tenure of Instructors Act, G.S. 1949, 72-5401 *et seq.,* contained certain specified statutory causes for dismissal of a tenured teacher. 72-5406 listed those causes as "immoral character, conduct unbecoming an instructor, insubordination, failure to obey reasonable rules promulgated by the board of education, inefficiency, incompetency, physical unfitness or failure to comply with reasonable requirements of the board of education as may be prescribed to show normal improvement and evidence of professional training." The statute also states that instructors may be dismissed because of decrease in the number of pupils or for other causes over which the board of education has no control. When the legislature adopted the present due process procedure in 1974, it did not specify with particularity any causes as justification for the termination or nonrenewal of a teacher's contract. Since causes for dismissal or nonrenewal are no longer enumerated under the 1974 act, it follows that the power and responsibility for specifying such causes must rest with the board of education. However, it must again be emphasized that, when an action to dismiss or nonrenew a teacher is initiated, there must be good cause for the proposed action. Tenured teachers cannot be dismissed for arbitrary rea-

sons and the responsibility for substantiating charges rests with the board of education.

The purpose of the due process hearing granted a teacher by statute is to develop the grounds that have induced the board to give the teacher notice of its desire to discontinue her services, and to afford the teacher an opportunity to test the good faith and sufficiency of the notice. The hearing must be fair and just, conducted in good faith, and dominated throughout by a sincere effort to ascertain whether good cause exists for the notice given. If it does not, or if the hearing was a mere sham, then justification for the board of education's action is lacking. The words "good cause" are somewhat indefinite and to a great degree are dependent upon the peculiar facts and circumstances presented to a court in a particular case. In *Rinaldo v. School Committee of Revere,* 294 Mass. 167, 169, 1 N.E.2d 37 (1936), the term "good cause" was applied in a case involving the dismissal of a teacher. A Massachusetts statute provided that a school committee could dismiss a teacher for "good cause." As applied to a teacher dismissal situation, the court held the term "good cause" to include "any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." See also *Nutter v. School Com. of Lowell,* 5 Mass. App. Ct. 77, 359 N.E.2d 962 (1977). The definition of "good cause" adopted in the Massachusetts case could reasonably be applied to the dismissal or nonrenewal of teachers in Kansas. We hold that under the Kansas due process statute (K.S.A. 1977 Supp. 72-5436 *et seq.*) a tenured teacher may be terminated or nonrenewed only if good cause is shown, including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system.

The primary responsibility for determining "good cause" rests with the school board. As provided in K.S.A. 1977 Supp. 72-5443, the decision of a school board on the question of whether a teacher's contract should be renewed or terminated is final, subject to appeal to the district court as provided by K.S.A. 60-2101. This leads us to the question of the scope of review by the district court of the school board's decision in a nonrenewal

case. That question is answered by *Brinson v. School District,* 223 Kan. 465, 576 P.2d 602 (1978). In *Brinson,* a school teacher was terminated by a school board; she filed her grievance in accordance with the established grievance procedure of the school district. The board held a grievance hearing and refused to reinstate her. She appealed to the district court under K.S.A. 1974 Supp. 60-2101(*a*) (now 60-2101[*d*]). The district court tried the matter de novo. The controversy in *Brinson* arose before the enactment of K.S.A. 1977 Supp. 72-5436 *et seq.* In *Brinson,* the scope of review by a district court of a school board's decision to nonrenew a teacher is clearly established. In *Brinson,* this court held that, in reviewing a decision of an administrative agency under 60-2101, a district court may not substitute its judgment for that of the administrative agency or tribunal and may not examine the issues de novo; it is limited to deciding whether: (1) the agency or tribunal acted fraudulently, arbitrarily, or capriciously; (2) the administrative order is substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority. In reviewing the judgment of the district court in an administrative appeal, this court is required to determine whether the district court properly limited its scope of review. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 451, 436 P.2d 828 (1968); *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978).

In the case now before us, the district court specifically set out the findings required by *Brinson.* It limited its scope of review to that required in *Brinson.* The school board contends, however, that the district court erroneously weighed the evidence and substituted its judgment for that of the school board. Here the district court found that the school board had acted properly within the scope of its authority. It further found that, even though the board had not followed the recommendations of the hearing committee, the board had not acted arbitrarily, fraudulently, or capriciously. The district court did find, however, that the school board had failed to present substantial evidence to support its reason for nonrenewal.

The teacher vigorously objects to the failure of the school board to make specific findings of fact and conclusions of law to justify the overruling of the hearing committee's recommendation. Mrs. Gillett concedes that, under K.S.A. 1977 Supp. 72-5443, while the

hearing committee is required to set forth its findings of fact in its written recommendation, the school board is not specifically required to make formal findings of fact in accepting or rejecting the hearing committee's recommendation. This court has held that while specific findings of fact by administrative agencies may be desirable, they are not indispensable unless required by statute or rule. *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 539 P.2d 1 (1975). The issue of the necessity of administrative findings was not covered in *Brinson.* We agree that specific findings of fact may be indispensable in some cases for a reviewing court to determine whether there was substantial evidence to support an administrative agency's order. In *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, 440 P.2d 660 (1968), this court noted that although no method of insuring against arbitrary action by an administrative agency has yet been found, the nearest approach is to require that findings of fact be made. When a conclusion must be buttressed by findings of fact for which there is supporting evidence, it becomes more difficult to conceal arbitrary action. We believe that the better procedure in all school termination cases is for a school board to either adopt the findings of the hearing committee or, if it cannot accept them, to make its own findings of fact so that the propriety of its action may be more easily determined upon review in district court. In the present case, however, the controlling facts are undisputed and we cannot find that the teacher involved here was in any way prejudiced by the failure of the school board to make specific findings of fact in rejecting the recommendation of the hearing committee.

Before considering the sufficiency of the evidence to establish "good cause" for nonrenewing the teacher's contract in this case, we will consider an issue of law raised by the school board. That issue, as stated by the school board, is whether the district court erred in holding that the hearing committee improperly considered the board's supplemental reasons for nonrenewal submitted by the school board to Mrs. Gillett on May 5, 1977. As noted above, K.S.A. 1977 Supp. 72-5437 requires a written notice of intention not to renew a contract to be served by the school board upon the teacher on or before the fifteenth day of March. 72-5438 requires the written notice of the proposed nonrenewal to include a statement of the reasons for the nonrenewal. The school board

maintains that, where a notice of nonrenewal is timely served prior to March 15, supplemental reasons for nonrenewal may be considered by a hearing committee where there is no showing that the teacher has been prejudiced thereby. At the hearing in this case, the committee considered both the original and supplemental reasons. The hearing was held on September 21, 1977, four-and-one-half months after the supplemental reasons were served. There is nothing in the statute which precludes school boards from amending a notice and giving additional reasons for nonrenewal. We have concluded that, if a teacher is afforded a full opportunity to dispute any supplemental reasons and has not been prejudiced in any way, supplemental reasons for nonrenewal of a teacher's contract may be considered by a hearing committee. This is especially proper where the supplemental reasons given are closely connected with a teacher's conduct complained of in the original notice. We believe that, in the long run, a teacher and the school system will be better off if all existing complaints against a teacher are aired and fully considered by the hearing committee. So long as a school board is required to sustain its burden of proof and the teacher is afforded a full opportunity to present evidence in her defense, a school board should be permitted to serve supplemental reasons for nonrenewal after the statutory date.

The primary issue raised on this appeal is whether the district court erred in holding that the school board had failed to present substantial evidence to support its reason for nonrenewal. From the evidentiary record in the case, we have concluded that there was substantial competent evidence showing good cause which justified the school board in its decision not to renew the teaching contract of Mrs. Gillett. In the original notice of nonrenewal served on the teacher on March 11, 1977, the reason given for nonrenewal was the criminal charges pending against Mrs. Gillett in Hastings, Nebraska. The evidence of the pendency of these two criminal cases was undisputed. Although Mrs. Gillett did not take the stand herself, the evidence presented on her behalf showed without question that she had taken articles at two stores in Hastings, Nebraska, on October 16, and November 17, 1976. The teacher did not deny that she took the articles of property. Her defense to the accusation was that, because of her mental condition at the time, she was not criminally responsible for her

actions. Dr. Dale W. Peters, a practicing psychiatrist, testified that he was a consultant to the Sunflower Guidance Center in Concordia. Mrs. Gillett was referred to that center for psychiatric evaluation in March of 1977. Dr. Peters examined her to determine her mental capacity and state of health, primarily for determining her mental state in relationship to the shoplifting incidents in Hastings, Nebraska. From these examinations, he concluded that, although she was not mentally ill, she was subject to altered states of consciousness resulting from sensitive reactions to a wide variety of foods. Various tests showed her sensitive to numerous foods which at times interfered with the functioning of her brain cells. During these attacks, she would become mentally disturbed and her judgment adversely affected.

At the time of her arrests in Hastings, Nebraska, it appeared that Mrs. Gillett was acting strangely and out of touch with reality. The thrust of Dr. Peters' testimony was that, at the time of the shoplifting incidents in Hastings, Nebraska, Mrs. Gillett, being in an altered state of consciousness, was not responsible for her actions. The evidence showed that she had been involved in another shoplifting incident in 1973. Apparently on a number of occasions, she had become confused and lost while driving her motor vehicle. Each of these situations involved an altered state of consciousness which came on gradually. Dr. Peters testified that acute episodes can be dramatic. Such episodes could last up to one hour and could occur at any time, including during classroom hours. Dr. Peters conceded that Mrs. Gillett could again be involved in shoplifting incidents in the future and that she was still under treatment at the time of the hearing. Although Dr. Peters was of the opinion that there was no danger to the students in the classroom, he indicated an attack during class could be disruptive. Similar attacks could occur either from the consumption of certain foods or from a withdrawal from such foods. At the time of the hearing Mrs. Gillett was in the course of an elimination diet which, hopefully, might eliminate her problem. If it did not work, then additional testing and treatment would be required. Dr. Peters mentioned over 80 foods which could cause Mrs. Gillett to go into an altered state of consciousness. He further stated that this list was inconclusive and that there might be other foods which could affect her in the same way.

A teacher testified that at one time she had observed Mrs. Gillett in an altered state of consciousness while seated in her automobile. After the arrests at Hastings, she heard a student discussing the fact that Mrs. Gillett had been arrested. Another teacher testified that she had also heard students mention the fact that Mrs. Gillett had been arrested. This was the first time the teacher had known about it. There was no evidence presented at the hearing as to the ultimate outcome of the criminal actions. There was testimony tending to show that Mrs. Gillett had been careless in keeping candy sale proceeds in her desk drawer and in failing to make daily deposits at the bank as directed by the school superintendent. However, there was no proof of any misappropriation or loss of any money as the result of Mrs. Gillett's handling of the school funds. In regard to excessive absences from teaching duties for allegedly being ill, the record is devoid of any misconduct on the part of the teacher in this regard. In regard to loss of community, student, and school respect for the teacher, the president of the school board testified that in his opinion the school board had community support in the nonrenewal of Mrs. Gillett's contract. A substitute teacher testified about a classroom incident where students were caught copying. When she told them copying wasn't allowed, the students responded: "The teacher can get away with it."

Mr. Ralph Hooten, who was president of the school board at the time the letter of nonrenewal was delivered to Mrs. Gillett, testified that the school board had unanimously decided that Mrs. Gillett's teaching contract should not be renewed because of the criminal charges of shoplifting pending in Nebraska. This conclusion was reached only after substantial discussion by the board over a period of hours. The board had concluded that these shoplifting charges reduced her efficiency as a teacher. It appeared to him that, with the charges pending, the learning atmosphere would be improved if her contract was not renewed. Mr. Hooten stated that the board was aware of a similar charge of shoplifting in the year 1973 which was subsequently dismissed. At that time the board decided not to pursue the matter further. When the charges came up again in 1976, the board felt that they could not ignore those charges, having knowledge of the prior incident in 1973. It is fair to conclude, from Mr. Hooten's testimony, that the school board was very much concerned about the

criminal charges against Mrs. Gillett, that the board spent hours discussing the situation, and that they decided to nonrenew her contract rather than to terminate her in midyear.

The issue to be determined here is whether there is substantial evidence in the record sufficient to establish good cause, justifying the school board's decision of nonrenewal of the teaching contract. The district court found that there was not. We have concluded there was. The problem presented in this case was obviously one of great difficulty for the school board. The trial court specifically found that the school board had not arbitrarily and fraudulently refused to accept the findings of the hearing committee. The district court was correct in that finding. It is difficult to reconcile that finding with the additional finding that there was no substantial evidence to support the board's reason for nonrenewal. Here the evidence was undisputed that, for a period of at least three years, the teacher had been subject to altered states of consciousness, during which she did not know what she was doing and her judgment and her conduct were adversely affected. At the time of the hearing, a testing and treatment program for Mrs. Gillett had been undertaken but not completed. She was attempting to get to the cause of her problem and was taking appropriate action to do something about it. However, we do not believe that, at that time, the school board acted unreasonably in concluding that it would be for the best interests of the school system to nonrenew Mrs. Gillett's teaching contract for the following school year.

We think it significant that in this case the teacher did not personally take the witness stand to give her own explanation as to her physical and mental condition or to deny that she, knowingly with larcenous intent, took property from the stores in Hastings, Nebraska. She did not testify that the treatment then being administered was effective or was beginning to solve her problem. She did not testify as to her relationship with the students, with other teachers, or with the school administrators. Not a single witness testified as to any contributions she was making to the educational program of the school district.

We cannot in good conscience find from the evidence that the board's action was not taken in good faith, or that it was arbitrary, irrational, unreasonable, or irrelevant to the school board's objective of maintaining an efficient school system for the students

in the school district. It follows that the judgment of the district court must be reversed and the case remanded to the district court with directions to enter judgment in favor of the school board.

IT IS SO ORDERED.