(930 P.2d 18)

No. 73,572

ALLEN BALDWIN, *Appellant*, v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 418, McPHERSON, KANSAS, and DEBBIE JANTZ, JIM LADUKE, HARRY HECKETHORN, LARRY SHOTTS, VIRGIL SKIPTON, LINDA TOTMAN, and LOWELL SCHMIDT, *Appellees*.

Opinion filed June 7, 1996.

*David M. Schauner* and *Jonathan M. Paretsky*, of Kansas National Education Association, of Topeka, for appellant.

*Fred W. Rausch, Jr*, of Topeka, for appellees.

Before ELLIOTT, P.J., MARQUARDT, J., and DAVID J. KING, District Judge, assigned.

KING, J.: Allen Baldwin is a tenured teacher in McPherson County U.S.D. No. 418. He initiated this action for injunctive relief and damages under 42 U.S.C. § 1983 (1994), alleging that the Board of Education and its members violated his due process rights by nonrenewal of his contract for the 1992-93 school year. The district court granted summary judgment to the Board and its members. Baldwin appeals. We affirm.

The parties agree there are no disputed facts. The McPherson Education Association (Association) is the duly authorized bargaining agent of the professional employees in the district pursuant to K.S.A. 72-5413 *et seq.* In late March or early April 1992, the Association and the Board entered into negotiations concerning the terms and conditions of employment for the 1992-93 school year. Monetary issues were postponed until after the legislature acted and, therefore, were not discussed until the end of May or early June.

For the 5 years prior to the 1992-93 school year, Baldwin's individual teaching contract provided for 30 paid extended duty days in addition to the contract-designated minimum duty days. Extended duty days were considered additional work in areas related to primary teaching and were not treated as supplemental contracts. The topic of extended duty days had been on the list of items noticed for negotiation in accordance with K.S.A. 72-5423.

No employee contract was terminated or nonrenewed by May 1, 1992. No employee was notified by May 1 that his or her salary might decrease by way of reduced extended duty days.

On June 22, 1992, the Association and Board ratified a negotiated agreement. The agreement provided for a 5-day increase in primary duty days for all teachers with a resulting increase in overall salary. These increases were met in part by reductions in some teachers' extended duty days. Baldwin's extended duty days were reduced from 30 to 12. This represented a loss of salary to Baldwin of approximately $3,200. Other teachers had their individual contracts modified in some way, and others also received reductions in extended duty days.

Individual teaching contracts were issued in accordance with the negotiated agreement. Baldwin signed his contract for the 1992-93 school year but attached a notice that he was reserving his statutory due process rights. The negotiated agreement contained a grievance procedure but Baldwin instead complained to the superintendent. The superintendent brought Baldwin's concerns to the Board, which determined that the negotiated agreement was fair and chose not to change Baldwin's contract.

There is no dispute regarding the suitability of Baldwin's claims under 42 U.S.C. § 1983. The basic elements of a § 1983 action entail a "person" acting "under color of" state law to deprive the claimant of a constitutional or federal right. Baldwin's claims satisfy these elements.

Since there are no disputed issues of fact, the only questions remaining are questions of law where this court's review is unlimited. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986). "Summary judgment is proper where the only question or questions presented are questions of law." *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993).

Baldwin contends that the reduction in extended duty days with resultant decrease in salary resulted in a "partial" nonrenewal of his contract. As a "nonrenewal," Baldwin alleges that the Board and members violated K.S.A. 72-5437 by not providing him with notice of nonrenewal by May 1, 1992, and that this, in turn, violated the due process procedures of K.S.A. 72-5438.

Baldwin's contentions beg the question of whether he truly had any property interest violated by K.S.A. 72-5437. Procedural due process rights are not triggered unless a property interest has been impaired. "State law rather than the United States Constitution must provide the source of this property interest." *Kosik v. Cloud County Community College*, 250 Kan. 507, 512, 827 P.2d 59 (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 [1985]), *cert. denied* 506 U.S. 867 (1992).

It is undisputed that tenured teachers in Kansas receive a property interest in continuing employment. K.S.A. 72-5410 *et seq.* Kansas law also specifies what process will be due if a teacher's interest in continuing employment is impaired. K.S.A. 72-5437 *et seq.* K.S.A. 72-5437 provides, in relevant part:

"(b) In the 1991-1992 school year, all contracts of employment of teachers . . . shall be deemed to continue for the 1992-93 school year unless written notice of termination or nonrenewal is served as provided in this subsection. Written notice to terminate a contract may be served by a board upon any teacher prior to the time the contract has been completed. In the 1991-92 school year, written notice of intention to nonrenew a contract shall be served by a board upon

any teacher on or before May 1, 1992. A teacher shall give written notice to a board that the teacher does not desire continuation of a contract for the 1992-93 school year on or before May 20, 1992, or, if applicable, not later than 15 days after final action is taken by the board upon termination of professional negotiations commenced in the 1991-92 school year absent a binding agreement under article 54 of chapter 72 of Kansas Statutes Annotated, whichever is the later date.

"(c) Terms of a contract may be changed at any time by mutual consent of both a teacher and a board."

K.S.A. 72-5438 provides specific procedures a board must follow whenever a teacher is given notice under K.S.A. 72-5437. The due process protections contemplated by K.S.A. 72-5438 require as a condition precedent that the teacher's contract is terminated or nonrenewed. Unless the negotiated agreement which reduced Baldwin's extended duty days constituted a "nonrenewal" of Baldwin's individual contract, the due process procedures of K.S.A. 72-5438 are inapplicable, and there can be no 42 U.S.C. § 1983 action.

Baldwin's contention that the reduction of his extended duty days constituted a nonrenewal of his contract is not supported by the language of the applicable statutes or Kansas case law.

Our courts have used "terminate" and "nonrenew" interchangeably but always in fact situations where a teacher's employment was "terminated" under its common meaning. See *Ottawa Education Ass'n v. U.S.D. No. 290*, 233 Kan. 865, 666 P.2d 680 (1983); *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 72, 605 P.2d 105 (1980); *Loewen v. U.S.D. No. 411*, 15 Kan. App. 2d 612, 813 P.2d 385 (1991).

In *Gillett*, our Supreme Court concluded that the legislative purpose of K.S.A. 72-5436 *et seq.* was the same as that of the Tenure of Instructors Act (G.S. 1949, K.S.A. 72-5401 *et seq.*), which was repealed in 1974 and replaced by K.S.A. 72-5436 *et seq.* In *Million v. Board of Education*, 181 Kan. 230, Syl. ¶ 1, 310 P.2d 917 (1957), the court stated:

"The evident purpose of the Tenure of Instructors Act (G.S. 1949, chapter 72, art. 54) is to protect competent and worthy instructors . . . against unjust *dismissal* . . . but it does not confer special privileges or immunities upon them to retain permanently their positions or salary . . . and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers

Boards of Education to *discharge* them for just cause in an orderly manner by the procedures specified." (Emphasis added.)

In *Gillett*, the court went on to state:

"The purpose of the due process hearing granted a teacher by statute is to develop the grounds that have induced the board to give the teacher notice of its desire to *discontinue her services*, and to afford the teacher an opportunity to test the good faith and sufficiency of the notice." (Emphasis added.) 227 Kan. at 78.

This court in *Thompson v. U.S.D. No. 259*, 16 Kan. App. 2d 42, 45, 819 P.2d 1236 (1991), held that K.S.A. 72-5411 and K.S.A. 72-5437 "unambiguously state they apply to teacher terminations." (Emphasis omitted.) In *Thompson*, a tenured teacher received notice of a layoff in accordance with a negotiated agreement. The negotiated agreement provided that a layoff should not be considered a termination or nonrenewal under K.S.A. 72-5437. The teacher argued that the negotiated agreement violated notice provisions of K.S.A. 72-5437 and his Fourteenth Amendment due process rights. 16 Kan. App. 2d at 43. This court held that the statutes were not applicable to layoffs and Thompson was bound by the negotiated agreement. 16 Kan. App. 2d at 48.

In short, no Kansas case has interpreted "nonrenew," as used in K.S.A. 72-5437, to include merely a change in contract terms in a negotiated agreement.

Kansas statutes relating to teachers' contracts are divided into 3 subsections: Continuing Contract Law, K.S.A. 72-5410 *et seq.*; Professional Negotiations, K.S.A. 72-5413 *et seq.*, and Due Process Procedure, Contract Termination, K.S.A. 72-5436 *et seq.* This court's interpretation of statutes is a question of law. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

K.S.A. 72-5437 states that a teacher's contract shall continue for the next year unless written notice of "termination or nonrenewal" is given. Under the plain language of the statute, the distinction between a "termination" and a "nonrenewal" is that the former applies where a teacher's employment is ended prior to the completion of the contract term during the school year, and the latter applies where the teacher's employment is ended at the conclusion

of the school year when the contract expires. In either case, the terms contemplate severance of the employment relation. There is nothing in the language of the statute that would support an interpretation of the term "nonrenew" to mean a change in the terms of the contract as Baldwin proposes.

We conclude the purpose of 72-5436 *et seq.* is to protect the basic employment of a tenured teacher and that it does not contemplate notice and full evidentiary due process rights for a teacher whose individual contract is merely modified through a collective negotiated agreement. Any other interpretation of K.S.A. 72-5436 *et seq.* would conflict with K.S.A. 72-5410 *et seq.* and K.S.A. 72-5413 *et seq.*

Nothing in the Continuing Contract Law, K.S.A. 72-5410 *et seq.*, would suggest that a change in terms or conditions of professional service constitutes a nonrenewal of an existing contract. The Continuing Contract Law provides for the continuation of a teacher's contract absent "termination" *or* a binding negotiated agreement. K.S.A. 72-5411 contains language similar to K.S.A. 72-5437; however, where K.S.A. 72-5437 contemplates the possibility of a "termination" mid-year, K.S.A. 72-5411 covers only contracts continued in full force absent a "termination" of a teacher's contract for the next year or a binding negotiated agreement.

Nothing in the Professional Negotiations subsection suggests that a change in terms or conditions of professional service constitutes a nonrenewal of an existing contract. The Professional Negotiations subsection sets out the ability of a duly recognized bargaining agent to negotiate certain "terms and conditions" of professional service with a board that will become binding on all teachers after a majority vote and ratification by the board. "Notices to negotiate on new items or to *amend an existing contract* must be filed on or before February 1 in any school year by either party." (Emphasis added.) K.S.A. 72-5423(a). If negotiations should stall, impasse procedures are outlined. See K.S.A. 72-5426. The statutory impasse date is June 1 in the current school year, well after any notice of nonrenewal is due tenured teachers. K.S.A. 72-5413(n).

K.S.A. 72-5436 *et seq.* clearly comes into consideration only when a board severs an employment relation with a teacher, thereby affecting the teacher's property interest in continued employment. The statute provides that terms of a contract can be changed at any time by mutual consent. K.S.A. 72-5411(c); K.S.A. 72-5437(c). The means of changing terms of a contract by mutual consent are spelled out in the Professional Negotiations subsection. In this case, the Board and the Association bargained to change the terms and conditions of all teacher contracts. The resulting agreement was ratified, becoming binding on all professionals in the bargaining unit. The negotiated agreement became incorporated into individual teacher contracts and, thus, became the contract that is subject to the Continuing Contract Law.

Affirmed.