(924 P.2d 651)

No. 74,943

UNIFIED SCHOOL DISTRICT NO. 500, KANSAS CITY, WYANDOTTE COUNTY, KANSAS, *Appellant,* v. MABLE ROBINSON, *Appellee.*

Opinion filed October 4, 1996.

*Deryl W. Wynn,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

*Brent C. Moerer,* of Anderson Law Offices, of Topeka, for appellee.

Before BRAZIL, C.J., MARQUARDT, J., and GENE B. PENLAND, District Judge Retired, assigned.

PENLAND, J.: Unified School District No. 500 (District) appeals the district court's decision which affirmed the hearing officer's ruling that the District failed to establish by substantial evidence

good cause for nonrenewal of Mable Robinson's teacher contract. We reverse.

The District had continuously employed Robinson as an elementary teacher since 1967. In the spring of 1994, the District decided to terminate Robinson's contract. Robinson was given notice of the school board's intent to nonrenew her contract for the 1994-95 school year due to her failure to satisfactorily plan and teach lessons and her failure to provide an orderly teaching and learning climate. As a tenured teacher, Robinson filed a request for a due process hearing pursuant to K.S.A. 72-5436 *et seq.* An evidentiary hearing was held beginning January 12, 1995. The hearing officer found that there was not substantial evidence to support the District's stated reasons for nonrenewal.

On appeal at the district court level, the court found that the hearing officer had applied the correct standard of "good cause," his findings were supported by substantial evidence, and he did not arbitrarily ignore undisputed evidence. The District appeals.

Dr. Nelda Kibby was the principal at Lindbergh Elementary School during most of Robinson's tenure there and was Robinson's main evaluator. Dr. Kibby testified that from the beginning, Robinson was a "mediocre" teacher, but Dr. Kibby believed that with time and support, Robinson would improve. Eventually, Dr. Kibby's concern over Robinson's performance grew. Dr. Kibby went to Robinson's room to retrieve her grade book and found that it contained either an inadequate record or no record of grades. The principal also discovered that Robinson's students had met only 14 out of 216 goals for second graders within the first 9 weeks of school, far below the progress obtained by other second-grade teachers.

Dr. Kibby had general concerns about Robinson's teaching style in that Robinson often had no clear objective in making sure the children in her class mastered their lessons. Although the special needs of the children at Lindbergh were growing, the ability of Robinson to control the classroom did not appear to keep pace. Dr. Kibby believed that many of the children's behavior problems escalated during the year that they spent in Robinson's classroom. Robinson responded to the children with comments such as:

"You're acting like a fool," "Don't act retarded," and "You've got a head like a doughnut."

There were several specific instances of inappropriate responses by Robinson to a child's behavior. For instance, when a student threatened to hit Robinson, Robinson threatened to hit the child. On May 24, 1993, a student asked to use the restroom. Because the class would be going to physical education in a few minutes, Robinson asked the child to wait. The child went back to his seat but then returned to the front of the classroom and told Robinson, "I'm going to have my mother kick your butt." Robinson testified that she told the child that if he ever said that again, then she would "kick his butt." Robinson then called Dr. Kibby to remove the child because by that time he was throwing a tantrum. Dr. Kibby testified that after talking with Robinson about this incident and thinking it over, the decision was made to place Robinson on leave without pay for the next school day. Following this incident, Robinson was placed on warning status and received intensive assistance during the 1993-94 school year.

During the 1993-94 school year, Dr. Kibby and Georgia Berry, the principal at Silver City Elementary School, made up the team for Robinson's assistance program. The team decided that Robinson should complete the new teacher mentor program whereby objectives were provided to help new teachers. Berry also observed Robinson approximately six times while Robinson was teaching. After each observation, Berry would conference with Robinson on what went well and what needed improvement. Berry's concerns were that Robinson was inconsistent in following through with suggestions and no real improvement was ever achieved. Berry was concerned about Robinson's lesson presentation, use of relevant materials, and ability to keep the students focused and involved in the lesson.

The three factors that should have guided the hearing officer in his decision were: (1) The burden of proof was on the school board, (2) the school board's reasons for termination had to constitute good cause, and (3) the decision had to be supported by substantial evidence. See *U.S.D. No. 434 v. Hubbard,* 19 Kan. App. 2d 323, 326, 868 P.2d 1240, *rev. denied* 255 Kan. 1007 (1994).

The standard of review of a due process hearing officer's decision is limited to deciding if: (1) the hearing officer's decision was within the scope of the officer's authority; (2) the hearing officer's decision was supported by substantial evidence; and (3) the hearing officer did not act fraudulently, arbitrarily, or capriciously. See *Hubbard*, 19 Kan. App. 2d at 326.

When a district court's decision is appealed, we review the hearing officer's decision as though the appeal has been made directly to us, and we are subject to the same limitations of review as the district court. See *Butler v. U.S.D. No. 440*, 244 Kan. 458, 464, 769 P.2d 651 (1989).

*Gillett v. U.S.D. No. 276*, 227 Kan. 71, 78, 605 P.2d 105 (1980), has been widely cited for its definition of good cause:

"The words 'good cause' are somewhat indefinite and to a great degree are dependent upon the peculiar facts and circumstances presented to a court in a particular case . . . . We hold that under the Kansas due process statute [K.S.A. 72-5436 *et seq.*] a tenured teacher may be terminated or nonrenewed only if good cause is shown, including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system."

" 'The evident purpose of the Tenure of Instructors Act . . . is to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind—political, religious or personal, and secure for them teaching conditions which will encourage their growth in the full practice of their profession, unharried by constant pressure and fear, but it does not confer special privileges or immunities upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system; and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers Boards of Education to discharge them for *just cause* in an orderly manner by the procedures specified.' " *Gillett*, 227 Kan. at 75-76 (quoting *Million v. Board of Education*, 181 Kan. 230, Syl. ¶ 1, 310 P.2d 917 [1957]).

The District argues that the hearing officer neither found that the reasons for nonrenewal of Robinson's contract were based on bad faith nor that the reasons were arbitrary, irrational, unreasonable, or irrelevant to the District's objective of maintaining an efficient school system for the students. It does appear that the hearing officer made no such finding.

The District contends that the hearing officer failed to balance the interests of everyone involved and instead focused solely on Robinson's tenure interest.

"In determining cases involving the dismissal or nonrenewal of a teaching contract, the courts are obligated to consider the rights of the teacher, the rights of the school board, and the rights of the school children to receive a quality education in a proper school atmosphere. In every such case, the challenge presented to the court is to provide a decision, fair and equitable both to the teacher and to the school board, with a minimum amount of disruption of the educational opportunity for the children." *Gillett*, 227 Kan. at 75.

The District also argues that the hearing officer erred or acted outside his scope of authority by applying his own standards of teacher performance rather than the administration's standards. This argument has merit.

Several of the hearing officer's comments or findings are particularly pertinent to this court's review. In paragraph 12 of his opinion, the hearing officer cited *U.S.D. No. 380 v. McMillen*, 252 Kan. 451, 845 P.2d 676 (1993), in which our Supreme Court appears to acknowledge that the duty to select and maintain an efficient, knowledgeable, and adequate teaching staff is one that devolves upon the local school board, which is accountable to the public. In paragraph 16 of his opinion, the hearing officer acknowledged that a tenured teacher may be nonrenewed for good cause shown, including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system. See *Gillett*, 227 Kan. at 78. In paragraph 22 of his opinion, the hearing officer acknowledged that if the notice of nonrenewal had stated that Robinson was terminated for inefficient or incompetent service, his decision would have been much more difficult.

In paragraph 26 of his opinion, the hearing officer conceded that the philosophy of teaching between the administration and Robinson had changed over the years and that the administration was of the opinion that Robinson was no longer a suitable teacher for the present school environment. In paragraph 28 of his opinion, the hearing officer stated that in the opinion of the administration,

Robinson no longer fit the system or the administration's expectations. In paragraph 30 of his opinion, the hearing officer indicated that while the record may reveal Robinson was a teacher with many years of experience who did not have exceptional credentials or ability, she appeared to have fit into the system until recently. Finally, in paragraph 54 of his opinion, the hearing officer wrote: "Satisfactory performance by a teacher is what the administrator says is satisfactory. Mrs. Robinson had to become a satisfactory teacher in the opinion and judgment of Dr. Kibby and Ms. [Berry]."

It does seem that the school board would be in a better position to determine the standard of performance for teachers within the district than a hearing officer. The changes in educational philosophy and the resulting change in methods of teaching might be challenging or even overwhelming to some teachers, but schools have a right to expect teachers to maintain skills in accordance with the changing methods of instruction. Certainly, the students must be prepared to deal with numerous changes in modern life.

The District argues that its reasons for nonrenewal were supported by substantial evidence. The District contends that the record shows the administration was concerned with Robinson's classroom management and instructional performance early on as evidenced by her evaluations in 1983, 1986, 1989, and 1992. During the due process hearing, two teachers testified both favorably and protectively for Robinson, though they expressed some concerns about her teaching performance. Robinson's 1992 evaluation clearly illustrates Dr. Kibby's concerns in that the performance check list was marked "needs improvement" in the areas of discipline, resourcefulness and adaptability, and ability to clarify lesson concepts. Additionally, Dr. Kibby's comments on the evaluation were almost entirely negative. The hearing officer did not refer to the additional unsatisfactory evaluations that Robinson received after having been placed on warning status and in intensive assistance in June 1993. The hearing officer's findings show that he believed the May 24, 1993, incident resulted in the District's placement of Robinson on warning status and in intensive assistance. The District counters that the undisputed evidence contained in

the evaluations shows that there were concerns about Robinson prior to this incident and that the incident itself was not really disputed.

Robinson presented no testimony to refute her 1989 or 1992 evaluations. At a minimum, the 1992 evaluation shows that Robinson's teaching performance was unsatisfactory. Robinson's April 1993 evaluation referred to Robinson's personal goals instead of a general evaluation of her teaching performance. These evaluations occurred before the May 24, 1993, incident and contradict the hearing officer's opinion that this event triggered Robinson's warning status.

The District contends that its nonrenewal notice was sufficient and that Robinson did not vigorously argue to the contrary. Citing *Loewen v. U.S.D. No. 411*, 15 Kan. App. 2d 612, 813 P.2d 385 (1991), the hearing officer noted that a teacher whose contract is being nonrenewed "is entitled to be judged solely on the reasons enunciated in the notice of nonrenewal. Due process requires no less." The hearing officer appears to have concluded that because the notice of nonrenewal did not specifically claim that Robinson was a "substandard" or an "incompetent" teacher, any evidence of substandard teaching or incompetence would be ignored. The claim that Robinson was a substandard teacher would be the more general underlying reason. If a teacher cannot adequately plan and teach lessons or maintain control of the classroom, then that teacher would be substandard by any definition. How the hearing officer distinguishes incompetence, substandard or inadequate planning and teaching of lessons, and inability to maintain control in the classroom is not clear.

The hearing officer concluded his opinion by writing:

"After considering and weighing testimony and exhibits introduced into evidence and making credibility determinations, U.S.D. No. 500 has failed to prove by substantial evidence the allegations that Mrs. Robinson failed to satisfactorily plan and teach lessons and failed to provide an orderly teaching and learning climate while employed as a teacher at Lindbergh Elementary School in the Kansas City, Kansas School District."

We disagree. As suggested in *Gillett*, we are impelled to weigh or balance all of the interests that are involved. We recognize that

the decisions of the hearing officer and the district court were difficult. We are also sensitive to Robinson's position and not unmindful of her many years of faithful service with the District.

But in the final analysis, we believe that after a fair and impartial review, the goal of promoting the best interests of the students and the educational process must prevail over the interests or convenience of an individual teacher. If the District is to be held accountable for the quality of education, it must be given significant authority to insure the success of its essential responsibilities.

We conclude that the hearing officer exceeded the scope of his authority by applying his own standard of teacher performance, that the hearing officer ignored undisputed evidence which supported the District's decision, and that the hearing officer acted arbitrarily or erroneously in finding that the District's evidence did not comport with the notice of nonrenewal.

The judgment of the district court affirming the ruling of the hearing officer is reversed.