No. 110,350

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NELSON GLOVER,
*Appellant*.

SYLLABUS BY THE COURT

1.

In light of a district court's discretion to withdraw a presentence guilty plea for "good cause" under K.S.A. 2013 Supp. 22-3210(d)(1), appellate courts review such an order under an abuse of discretion standard.

2.

Abuse of discretion means that the decision was (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. The party asserting that a district court abused its discretion bears the burden of establishing the abuse.

3.

In determining whether a defendant has established good cause to withdraw a plea prior to sentencing, Kansas courts first consider the *Edgar* factors:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly

1

and understandingly made. In addition, courts should consider any other factors relevant to the concept of good cause.

4.

To allow a defendant to automatically withdraw his or her plea prior to sentencing without a showing of good cause would render pleas temporary and meaningless.

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed October 10, 2014. Affirmed.

*Carl Maughan*, of Maughan Law Group, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

BRUNS, P.J.: Nelson Glover appeals the district court's order denying his motion to withdraw his plea. Glover contends that his counsel coerced him into pleading guilty. As a result, he contends that he did not voluntarily and knowingly enter a guilty plea. A review of the record reveals that Glover's decision was not a product of coercion. Instead, we find that Glover made a tactical decision based on the advice of competent legal counsel after extensive plea negotiations. Moreover, we reject Glover's argument that he should be able to withdraw his plea simply because he changed his mind. Accordingly, because we conclude that the district court appropriately found that Glover failed to show good cause to withdraw his plea as required by K.S.A. 2013 Supp. 22-3210(d)(1), we affirm.

FACTS

Glover was one of two men charged with the murder of John C. Tolliver II, which occurred on July 17, 2011. Originally, Glover was charged with second-degree reckless murder, aggravated burglary, aggravated robbery, and criminal trespass. The State later filed an amended information alleging the same charges but under a different theory of aggravated burglary. Subsequently, the State filed a second amended information charging Glover with first-degree premeditated murder while leaving the remaining charges unchanged.

The district court set the case for a jury trial to begin on October 9, 2012. After a series of continuances, however, the jury trial was eventually rescheduled for December 10, 2012. Throughout the case, Glover was represented by Steven Mank. It is undisputed that Mank is an experienced criminal defense attorney who has defended numerous felony cases and has been on the Sedgwick County felony appointment list for approximately 20 years. In fact, Glover stated that Mank is "[o]ne of the best attorneys pertaining to a murder case."

During Mank's representation of Glover, the two met approximately 15 or 16 times. Early in the case, the two discussed the possibility of a plea agreement. At that point in time, Glover told Mank that he was not interested in negotiating a plea. Later, after the State filed its second amended information, Mank advised Glover that he did not believe there was enough evidence for a first-degree murder conviction. Mank, however, advised Glover that because of his criminal history he would risk being sentenced to more than 25 years in prison if convicted of a lesser included offense. Accordingly, it was Mank's advice that Glover should enter into plea negotiations.

A few days before the jury trial was scheduled to begin, Glover decided that he wished to enter into a plea agreement. From that point on, a series of discussions took

3

place between Glover, Mank, and the prosecutor as to the amount of time Glover could realistically receive in exchange for a plea. During the negotiations, Mank told the prosecutor that he believed Glover should receive less prison time than the other defendant charged with killing Tolliver because he believed Glover to be less culpable. Evidently, the other defendant pled guilty in exchange for a recommendation of 184 months in prison.

Ultimately, after significant negotiations, Glover agreed to plead guilty in exchange for a recommendation of 152 months in prison. As such, Mank prepared a "Defendant's Acknowledgement of Rights and Plea" and met with Glover to review the document on December 9, 2012. During their meeting, Mank explained to Glover the contents of the written plea agreement and informed Glover that it was his choice alone whether to go to trial or enter a plea. After considering his options, Glover chose to sign the written plea agreement.

On the day the case was scheduled to go to trial, a plea hearing was held. During the hearing, the district court conducted an extensive colloquy with Glover. At one point during the colloquy, the following exchange occurred:

> "THE COURT: All right, now the lawyers have prepared some documents here, including a Plea Agreement and an Acknowledgment of Rights form. There are signatures on these documents, including what appear to be your signatures above the word defendant on both these documents. Are those your signatures?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Have you had a chance to sit down with Mr. Mank and go over these documents, have him explain them to you, and answer any questions that you might have about what's contained in the documents?
>
> "A. Yes.

4

"THE COURT: And after doing that was it your decision alone to sign both these documents?

"A. Yes."

Glover represented to the district court that he had no questions or concerns regarding the plea agreement. When the district court reviewed the factual basis for the aggravated burglary charge, however, and asked whether the facts were true, Glover responded, "No, it is not." Mank stated that he believed Glover was confused regarding the theories of aiding and abetting. Shortly thereafter, Glover told the prosecutor, "There wasn't an aggravated burglary," and the district court warned him not to speak directly to the prosecutor but to direct his comments to the bench or to his attorney. The district court then adjourned the proceedings so Glover and Mank could confer.

After conferring with his attorney, Glover decided to go forward with the plea hearing. When the hearing resumed, the district court said to Glover, "I don't want you to admit to anything you don't want to admit to . . . so you've had a chance to discuss that with Mr. Mank; is that correct?" Glover responded, "Yes." The district court then asked Glover, "[A]re you willing to admit that when you went into that residence you went in there with the intent to help [the codefendant]?" Again, Glover replied, "[Y]es." The district court then read the remaining facts relating to the aggravated burglary count, and Glover indicated they were true.

At the conclusion of the plea hearing, Glover pled guilty to involuntary manslaughter, aggravated burglary, and robbery. The district court accepted Glover's guilty pleas and set the case for sentencing. Prior to the sentencing hearing, Mank met with Glover to discuss the presentence investigation report. Glover told Mank that the codefendant had been charged with murder in Colorado and that he wanted to withdraw

5

his plea. Evidently, Glover believed the Colorado charge somehow proved that the codefendant was the one who actually murdered Tolliver.

On February 14, 2013, Glover filed a motion to withdraw his plea, alleging that Mank had placed undue pressure on him. Accordingly, the district court appointed new counsel to represent Glover. At a hearing on the motion held on March 15, 2013, both Glover and Mank testified. Specifically, Glover testified:

"Q. And during the end of [the meeting] did you feel that Mr. Mank had pressured you at that point into entering the plea?

"A. Yeah, because I ended up taking it.

"Q. Well, can you describe to the Court how you felt that Mr. Mank pressured you into taking the plea?

"A. I felt how he pressured me because he said this is the best that he can do."

Later, however, Glover admitted that Mank did not actually place undue pressure on him:

"Q. Now why do you want to withdraw your plea as to undue pressure?

"A. Undue pressure, it is not really about undue pressure. I feel that I was conned into taking the plea because they kept coming down because of my criminal history. I can't change my criminal history."

In citing *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006) and *State v. Macias-Medina*, 293 Kan. 833, 268 P.3d 1201 (2012), the district court found that there was "virtually no evidence to support" the withdrawal of Glover's plea. Rather, the district

6

court found the extensive negotiations between Glover and the State showed that he was fully aware of his rights:

> "A review of the transcript indicates to me all the rights were properly gone over with the defendant. There was a careful discussion . . . . This Court does not ask the defendant specifically to tell everything that occurred, but there [was a] significant colloquy between the Court and the defendant about the situation, about the facts, particularly the facts involving when he went into the house, why he went into the house, [and] the issue of his responsibility for going into the house."

Thus, the district court denied Glover's motion to withdraw his plea, and it set the case for sentencing.

On May 3, 2013, Glover was sentenced to a total of 152 months in prison. The district court ordered that restitution be left open and decided within 30 days. Glover filed a notice of appeal on the same day he was sentenced. After the appeal was docketed, we issued an order to show cause why the appeal should not be dismissed pursuant to *State v. McDaniel*, 292 Kan. 443, 254 P.3d 534 (2011). After receiving responses from the parties, we retained the appeal.

ANALYSIS

*Standard of Review*

In light of a district court's discretion to withdraw a presentence guilty plea for "good cause" pursuant to K.S.A. 2013 Supp. 22-3210(d)(1), we review such an order under an abuse of discretion standard. *State v. Freeman*, 292 Kan. 24, 27-28, 253 P.3d 1 (2011). Abuse of discretion means that the decision was (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Fischer v.*

7

*State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). The party asserting that a district court abused its discretion bears the burden of establishing the abuse. *Edgar*, 281 Kan. at 38.

Although Glover recognizes that abuse of discretion is the normal standard used to review cases such as this, he argues that we should instead use a de novo standard of review because his due process rights are at issue. The Kansas Supreme Court has noted, however, that the "*Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet." *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). Further, the cases Glover relies on did not employ a de novo standard. See *State v. Hill*, 247 Kan. 377, 385, 799 P.2d 997 (1990) ("Withdrawal of a plea is discretionary with the trial court and will not be reversed on appeal unless it is established that the trial court abused its discretion in refusing to permit withdrawal of the plea."). Thus, we continue to review the withdrawal of a plea prior to sentencing under an abuse of discretion standard.

*Meaning of "Good Cause" under K.S.A. 2013 Supp. 22-3210(d)(1)*

The plain language of K.S.A. 2013 Supp. 22-3210(d)(1) grants a district court the discretion to allow a defendant to withdraw his or her plea before sentencing upon a showing of "good cause." To determine whether a defendant has established good cause, Kansas courts first look to the *Edgar* factors:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36. In addition, district courts may consider other relevant factors in order not to "distort the concept of good cause." *Macias-Medina*, 293 Kan. at 837.

Nevertheless, Glover encourages us to abandon the *Edgar* and *Macias-Medina* factors and instead adopt the following definition of "good cause" found in an employment law case decided by the Kansas Supreme Court in 1980:

> "*As applied to a teacher dismissal situation*, the [Massachusetts Supreme Court] held the term 'good cause' to include 'any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system.' (quoting *Rinaldo v. School Committee of Revere*, 294 Mass. 167, 169, 1 N.E. 2d 37 [1936]) . . . *The definition of 'good cause' adopted in the Massachusetts case could reasonably be applied to the dismissal or nonrenewal of teachers in Kansas*." (Emphasis added.) *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 78, 605 P.2d 105 (1980).

Based on *Gillett*, Glover contends that as long as the grounds for withdrawal are not "arbitrary, irrational, unreasonable, or irrelevant," district courts should allow defendants to withdraw their pleas prior to sentencing. On its face, however, *Gillett* is limited to cases involving the dismissal of teachers. Moreover, the holding in *Gillett* was superseded by statute and is no longer applicable even in teacher dismissal or other employment law cases. See *U.S.D. No. 500 v. Robinson*, 262 Kan. 357, 360, 940 P.2d 1 (1997). Accordingly, we have no reason to believe that the Kansas Supreme Court would adopt the "good cause" definition found in *Gillett* in cases involving motions to withdraw pleas pursuant to K.S.A. 2013 Supp. 22-3210(d)(1).

At oral argument, Glover's attorney argued that defendants should be permitted to withdraw their pleas prior to sentencing simply because they have changed their minds upon reflection. Although we find this argument to be intriguing, Glover is basically asking us to rewrite the language of K.S.A. 2013 Supp. 22-3210(d)(1) by changing the "good cause" standard to a "no cause" standard; in other words, to make withdrawal of a plea automatic if it is requested before sentencing. Of course, if such a change in public

9

policy is to be made, it should be made by the Kansas Legislature—not by this court. See *State v. Cheeks*, 298 Kan. 1, 11, 310 P.3d 346 (2013).

Furthermore, the United States Supreme Court has warned against the adoption of an automatic withdrawal standard after a plea has been accepted, finding:

> """Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a 'grave and solemn act,' which is 'accepted only with care and discernment.'""" *United States v. Hyde*, 520 U.S. 670, 677, 117 S. Ct. 1630, 137 L. Ed. 2d 935 (1997) (quoting Advisory Committee's Notes on Fed. R. Crim. Proc. 32).

See *Starrs v. Virginia*, 287 Va. 1, 752 S.E.2d 812 (2014); *United States v. Molina-Chavez*, 10-CR-0187-CVE, 2011 WL 917716 (N.D. Okla. 2011), *aff'd* 450 Fed. Appx. 707 (10th Cir. 2011).

Like Kansas courts, federal courts do not allow defendants to automatically withdraw their pleas once the district court has accepted them. Rather, under Fed. R. Crim. Proc. 11(d) (formerly Fed. R. Crim. Proc. 32[e]), a defendant can withdraw a plea after it has been accepted by a district court only if he or she can show a "fair and just reason" for the withdrawal. Similar to the factors considered by Kansas courts in applying the "good cause" standard, federal courts consider the following factors in applying the "fair and just reason" standard:  "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources. [Citation omitted.]" *United States v. Muhammad*, 747 F.3d 1234, 1241 (10th Cir. 2014), *cert. denied* 134 S. Ct. 2741 (2014).

10

Hence, we decline Glover's invitation to expand the definition of "good cause" in K.S.A. 2013 Supp. 22-3210(d)(1). To do otherwise might render a guilty plea temporary and a meaningless gesture. Instead, we will continue to apply the factors set forth in *Edgar* and *Macias-Medina* to determine whether a defendant has shown "good cause" for the withdrawal of a plea.

*Application of Edgar and Other Relevant Factors*

In the present case, Glover conceded that his trial attorney was competent. Instead, Glover sought to withdraw his plea because he claimed his trial attorney unduly pressured him to accept a plea agreement. At the hearing on the motion to withdraw his plea, however, Glover admitted "it is not really about undue pressure. I feel that I was conned into taking the plea because they kept coming down because of my criminal history. I can't change my criminal history." Thus, it appears that the pressure Glover felt to enter into a plea agreement was caused by his criminal history and the sentencing guidelines—not by any coercion from his trial attorney.

Glover also argues that he should be allowed to withdraw his plea because he was unfamiliar with the legal system. But a review of the record reveals that Glover has an extensive criminal background. In addition, Glover refused to negotiate a plea during the early stages of this case and later rejected two plea offers that he received from the State. Likewise, the record shows that there were extensive negotiations between Glover and the State regarding the length of his prison sentence. As such, we do not find that Glover was unfamiliar with the legal process or that he passively accepted the plea agreement that was ultimately negotiated.

Glover also argues that his plea was not voluntarily entered because he tried to object to the aggravated burglary count during the plea colloquy but was rebuked by the judge for talking to the prosecutor. But a review of the record of the plea hearing reflects

11

that Glover voluntarily pleaded to aggravated burglary. Although Glover was told to direct his remarks to the bench or to his attorney rather than the prosecutor, the district court did not rebuke him. Moreover, the district court took time to discuss the aggravated burglary charge with Glover and adjourned the proceedings so he could confer with his attorney before deciding to enter his plea.

Glover's last argument is that his trial attorney improperly used Glover's mother to convince him to enter into a plea agreement. But Glover never argued this point at the district court. He, therefore, cannot raise the issue on appeal. *State v. Holt*, 298 Kan. 469, 477, 313 P.3d 826 (2013) (A point not raised in the district court cannot be raised for the first time on appeal.). Moreover, even if he had raised the issue below, we do not find that this constitutes "good cause" to withdraw his plea. See *State v. Denmark-Wagner*, 292 Kan. 870, 877, 258 P.3d 960 (2011); *State v. Stegnik*, No. 104,072, 2013 WL 1234186, at *8 (Kan. App. 2013) (unpublished opinion), *rev. denied* 297 Kan. 1255 (2013). At most, the record reflects that his trial attorney simply conveyed to Glover that his mother believed the plea would be a good deal.

Finally, we pause to note that the same judge presided over both the plea hearing and the withdrawal hearing. This is relevant in the present case because the trial judge noted that he recalled portions of the plea hearing. The Kansas Supreme Court has recognized that this is an important consideration in light of a district court's ability to observe witnesses:

> "Perhaps most importantly for our purposes, the same judge presided at the plea hearing and at the motion to withdraw plea hearing. At the plea hearing, the judge was able to observe [defendant] when he stated that he understood the nature of the charges against him; that he understood his rights; that he was entering a plea of his own volition; and that he was not threatened or coerced into entering the plea. Thus, when [defendant] testified at the plea withdrawal hearing that he had been misled, coerced, and forced to enter a plea, the judge was able to ascertain that such testimony 'did not comport with

12

what occurred at the time of plea,' and to draw a conclusion as to which contradictory testimony was more credible. Likewise, the judge had the opportunity to observe the demeanor of the attorney and interpreter when they contradicted [defendant's] characterization of the plea discussions." *Macias-Medina*, 293 Kan. at 839.

We, therefore, conclude that the district court did not abuse its discretion in denying Glover's motion to withdraw his plea.

Affirmed.