NOT DESIGNATED FOR PUBLICATION

No. 118,484

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFERY DANE SWINDLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed April 19, 2019.
Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Kerwin L. Spencer*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER, J., and STUTZMAN, S.J.

PER CURIAM: Jeffrey D. Swindler appeals his jury trial conviction for rape, an off-grid felony. Swindler originally claimed the district court lacked jurisdiction to proceed with his second trial, but at oral argument he agreed the Supreme Court had resolved the issue and no longer challenged the district court's jurisdiction. Swindler's two remaining claims assert the district court erred when it denied his request for a continuance the afternoon before trial, and the district court erred in not granting his motion for a mistrial after the jury was sworn in. We find no error on these two complaints. We affirm.

1

A jury convicted Swindler of rape in 2010, but the Kansas Supreme Court reversed his conviction because the district court erred in allowing the State to submit testimony about Swindler's unlawfully obtained confession. *State v. Swindler*, 296 Kan. 670, 684, 294 P.3d 308 (2013). The Kansas Supreme Court remanded the case for a new trial. 296 Kan. at 684.

Swindler's court appointed attorney from his first trial remained appointed when the district court received the remanded case. The district court met with counsel and set a trial date conflicting with the schedule of Swindler's attorney. A few weeks before the trial, Swindler sought a new court appointed attorney. Swindler claimed his attorney did not investigate text messages allegedly sent from the victim's mother to Swindler's sister. According to Swindler, these text messages threatened Swindler with possible imprisonment if he did not leave his wife. The district court appointed a second attorney for Swindler and granted a continuance to allow the attorney to prepare for trial.

Just before the second trial, the Kansas Supreme Court stayed the proceedings and recalled its mandate because the State had petitioned the United States Supreme Court for a writ of certiorari. In January 2014, the United States Supreme Court denied certiorari, so the district court scheduled the trial on February 11, 2014. *Kansas v. Swindler*, 571 U.S. 1170, 134 S. Ct. 1000, 187 L. Ed. 2d 863 (2014). Swindler posted an appearance bond that day. Swindler's second appointed attorney had another trial on February 11, 2014, so the district court continued the trial to Tuesday, April 8, 2014.

Swindler filed a motion in limine, which the district court heard on the Thursday before trial. Swindler also moved for a new trial date because he believed there was a possible plea agreement. The State admitted there had been plea discussions but denied

presenting any firm or written plea offer to Swindler. The district court denied the continuance and said trial would commence the following Tuesday.

At about 4:45 p.m. the Friday before trial, Swindler retained an attorney who entered his appearance and requested a continuance. The district court heard Swindler's motion on Monday afternoon before trial began Tuesday morning.

According to his retained attorney, Swindler was dissatisfied with his second appointed attorney because she did not meet with two of his prospective witnesses or investigate certain text messages. Swindler alleged one month before the victim accused him of rape, the victim's mother sent text messages to the mother of Swindler's children and threatened to send Swindler to prison. Swindler's retained attorney asked for at least 90 additional days to prepare for trial.

The district court denied Swindler's continuance request. The district court found Swindler's late request inconvenienced the court because it had 61 potential jurors summoned for voir dire the next morning. The district court also did not believe Swindler's request was legitimate because Swindler raised no issues about wanting to replace his court appointed attorney at his motion in limine hearing a few days earlier. The court noted Swindler knew about the trial months before and his second court appointed attorney has had months to prepare for trial with a difficult client. The district court gave Swindler's retained attorney the option of participating in the trial, but he declined and withdrew.

After the parties selected jurors, but outside their presence, Swindler moved for a mistrial. Swindler believed there might be animosity between his brother and the daughter of a juror. Swindler claimed his brother and the juror's daughter had a five-year-old daughter, but the parents were no longer in a relationship. The district court asked whether Swindler wanted the juror further questioned and Swindler argued it was

3

necessary. The district court allowed Swindler to confer with his appointed trial attorney and they gave the district court several questions for the juror. The district court asked Swindler's questions and confirmed the juror's daughter had a child with Swindler's brother. The district court also asked the juror whether his relationships would prevent him from being fair and impartial. The juror responded: "No. When I heard [Swindler's] last name, I didn't know if they were related because I didn't recognize the young man. So nothing was a flag. Wasn't thrown in my head that would be any issues." The district court denied Swindler's motion for a mistrial. The parties proceeded with the trial and the jury found Swindler guilty of one count of rape, an off-grid felony under Jessica's Law. The district court imposed a mandatory sentence of lifetime imprisonment with parole eligibility after 25 years.

ANALYSIS

*Mandate issue*

Swindler claims the district court lacked jurisdiction when it tried him a second time. At oral argument, Swindler's appellate counsel acknowledged this issue had been resolved and the district court had jurisdiction to proceed with Swindler's second jury trial as mandated by the Kansas Supreme Court.

*No error to deny continuance*

Swindler argues the district court erred when it denied him a continuance because it prevented him from presenting his defense through retained counsel. Under K.S.A. 22-3401, a district court may grant a continuance "for good cause shown." Generally, appellate courts will not disturb the grant or denial of a request for a continuance absent a showing of an abuse of discretion. *State v. Burnett*, 300 Kan. 419, 436, 329 P.3d 1169 (2014); *State v. Glover*, 50 Kan. App. 2d 991, 996-98, 336 P.3d 875 (2014), *rev. denied* 302 Kan. 1014 (2015) (discussing the meaning of "good cause"). That said, when a defendant claims the denial of a continuance interfered with his or her ability to present a

4

defense, the appellate court will review the question de novo. *State v. Johnson*, 304 Kan. 924, 945, 376 P.3d 70 (2016). When a trial judge's discretionary power to deny continuances conflicts with a criminal defendant's constitutional right to secure counsel of his or her choice, the reviewing court must balance several factors in determining whether the trial court's conduct was fair and reasonable. Those factors are: (1) whether granting a continuance would be inconvenient for witnesses, the court, the attorneys, or the parties; (2) whether the court has granted other continuances; (3) whether the defendant has established legitimate reasons for the delay; (4) whether the need for a delay is the fault of the defendant; and (5) whether the denial of the delay would result in prejudice to the defendant. *Johnson*, 304 Kan. at 945-46 (quoting *State v. Anthony*, 257 Kan. 1003, 1019, 898 P.2d 1109 [1995]).

In *Johnson*, the Kansas Supreme Court found the district court did not err when it denied Johnson's request for a new trial date. 304 Kan. at 948-50. There, the State charged Johnson with first-degree murder. Before trial, Johnson sought and received a different court appointed attorney three times. This resulted in the district court continuing the case three times. Five days before trial, Johnson's retained counsel appeared and requested a new trial date. The State opposed the motion because it had 22 witnesses ready to testify and it went to great lengths to ensure the testimony of some who were less than cooperative. The district court denied the motion.

On appeal, the Kansas Supreme Court affirmed the decision by applying the five factors in *Anthony*. *Johnson*, 304 Kan. at 948-50. First, the *Johnson* court noted the continuance would inconvenience the witnesses and the State. Next, the court found Johnson had received three trial continuances and the State objected to two of them. The court also found Johnson had no legitimate reason for the delay because his appointed attorney was ready for trial. The Kansas Supreme Court also concluded the delay was Johnson's fault. Although Johnson had expressed a desire to retain counsel, there was no evidence he attempted to do so until eight months after he expressed the desire. Finally,

5

the court found Johnson faced no prejudice in the denial of his request for continuance because Johnson's third appointed attorney was not ineffective and retained counsel could have participated but declined to do so.

Here, the district court's conduct was fair and reasonable under the *Anthony* factors. As detailed below, all but one factor weighs against Swindler.

*Inconvenience to the court*

The first factor weighs against Swindler. Although there was no inconvenience to the parties, witnesses, or victim, the district court faced an inconvenience because it had summoned 61 potential jurors for voir dire the next morning. The district court acknowledged a misdemeanor trial set the same day as Swindler's, but it would not need as many jurors as Swindler's trial. According to the court, a continuance would still force the court to pay the jurors for mileage the next day. The district court is much better positioned to understand the burdens it faced in seeking to reschedule the trial in less than 24 hours. This inconvenience weighs against Swindler.

*Swindler caused one continuance*

The factor of previous continuances weighs in Swindler's favor. The district court had granted several continuances, but Swindler only caused one of those continuances. When the Kansas Supreme Court remanded the case, Swindler's first court appointed attorney remained appointed. The appointed attorney could not appear for the first trial date because of scheduling conflicts. Meanwhile, Swindler sought a new court appointed attorney, claiming his first appointed attorney did not investigate text messages allegedly sent from the victim's mother to Swindler's sister. According to Swindler, these text messages threatened Swindler with possible imprisonment if he did not leave his wife, a cousin of the victim's mother. The district court appointed Swindler's second attorney

6

who then needed a continuance to prepare for trial. The request was granted. Swindler caused this continuance.

A few days before trial, the Kansas Supreme Court stayed the proceedings and recalled its mandate. After the United States Supreme Court denied certiorari, the district court set the trial on February 11, 2014. *Swindler*, 571 U.S. 1170. Swindler's second appointed attorney had a trial in another case the same day, so the district court continued the trial to April 8, 2014, through no fault of Swindler. The only other pending continuance was brought by Swindler for his retained counsel to prepare for trial. Had the district court granted Swindler's request on the eve of trial, it would have been the second continuance attributable to Swindler and his attorneys.

*No legitimate reasons for the delay*

At best, Swindler claims three reasons to delay the trial: (1) He wanted new representation; (2) neither his retained nor his appointed attorney had spoken with his newly proposed witnesses; and (3) neither attorney had investigated the alleged text messages. None of these reasons appears legitimate from the record before us.

Swindler had ample time to hire counsel. Swindler posted an appearance bond nearly four months before trial but did not hire his attorney until the weekend before trial. Just before the weekend, Swindler could have told the district court he wanted to retain an attorney, but he did not. Instead, Swindler requested a continuance the Thursday before trial because of a possible plea agreement. The State denied offering a firm or written plea offer and the district court denied the continuance.

Swindler also had enough time to assist his second appointed attorney with the witnesses. Swindler was out of custody for four months. His second appointed attorney

7

discussed the witnesses with him, but Swindler never gave their contact information to his attorney.

Swindler's complaint about the text messages does not appear to be a legitimate reason. Swindler requested his second appointed attorney shortly after the Kansas Supreme Court remanded the case. At the time, Swindler claimed his first court appointed attorney failed to investigate text messages allegedly sent from the victim's mother to Swindler's sister. On the eve of trial, Swindler alleged his second court appointed attorney failed to investigate text messages allegedly sent from the victim's mother to the mother of his own children, not his sister. A careful reading of Swindler's changing complaints casts doubt on the legitimacy of his request for more delays in his trial.

*The need for delay attributable to Swindler*

As already mentioned, Swindler did not give his witness contact information to his second court appointed attorney, so she could not investigate the issues he wanted to resolve through hired counsel. Swindler hired counsel the weekend before trial. Swindler's inaction caused the need to delay the trial, not the district court's.

*No prejudice to Swindler*

Finally, the district court's denial of a continuance did not result in prejudice to Swindler. As in *Johnson*, the district court gave Swindler's retained attorney the option of participating in trial, but counsel declined. Swindler also was not prejudiced by a lack of defense. He makes no claim his court appointed attorney was ineffective, so he has waived and abandoned this argument. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Swindler's second appointed attorney represented him at trial and she had several months to prepare his case. True, he could have bolstered his own defense, but Swindler's second attorney had asked for witness contact information from Swindler and

8

he failed to provide it. Finally, we note Swindler fails to show us on appeal how his inability to use the new witnesses or text messages prejudiced him at trial.

When we apply all of the factors from *Anthony*, restated with approval in *Johnson*, we find four of the five support the district court's decision to deny Swindler's request. We find no abuse of discretion, and Swindler was not denied his constitutional right to secure retained counsel of his choosing.

*Mistrial not warranted*

Swindler claims the district court erred in denying his motion for a mistrial and violated his due process rights when the district court seated a juror with extended family ties to Swindler. When a party moves for a mistrial, the district court engages in a two-step process. K.S.A. 22-3423(1)(c). First, the district court must decide if there is prejudicial conduct inside or outside the courtroom resulting in a fundamental failure in the proceeding. If so, the district court must next decide whether the conduct makes it impossible to continue the trial without injustice or whether the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. *State v. Moyer*, 306 Kan. 342, 356, 410 P.3d 71 (2017); *State v. Sherman*, 305 Kan. 88, 118-19, 378 P.3d 1060 (2016). To determine whether an error makes it impossible to proceed with the trial without injustice and requires a mistrial, a court must assess whether the fundamental failure affected a party's substantial rights under the harmless error statutes, K.S.A. 2018 Supp. 60-261 and K.S.A. 60-2105, if a right guaranteed by the United States Constitution is not implicated; but if a constitutional right is implicated, the error must be assessed under the constitutional harmless error standard in *Chapman v. California*, 386 U.S. 18, 23-24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

On appeal of a criminal case, appellate courts evaluate the trial court's two-step process in K.S.A. 22-3423(1)(c) under an abuse of discretion standard. Judicial discretion is abused if the judicial decision (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Moyer*, 306 Kan. at 355-56.

Swindler alleges the district court erred because it ignored "inherent bias" between a juror and Swindler. The juror's granddaughter was Swindler's niece. Based on Swindler's charges, he concludes the juror would want Swindler in prison instead of around the child. However, the timing of why Swindler's motion for mistrial is suspect is because Swindler could have raised his concerns about the juror in voir dire through challenges for cause or with preemptory challenges. Instead, Swindler moved for a mistrial after the district court impaneled the jury. The district court did not abuse its discretion when it denied Swindler's motion for a mistrial.

Even so, the record does not support Swindler's claim the district court abused its discretion. The district court recognized the possibility of prejudice and took appropriate steps to determine whether any prejudice would result in a fundamental failure in the proceeding. After Swindler moved for a mistrial, the district court asked Swindler's proposed questions to the juror. When asked whether the distant family relationships would prevent him from being fair and impartial, the juror responded: "No. When I heard [Swindler's] last name, I didn't know if they were related because I didn't recognize the young man. So nothing was a flag. Wasn't thrown in my head that would be any issues." The juror confirmed he could remain fair and impartial.

Based on the juror's statements, there does not appear to be any prejudice, actual or inherent. Nothing in the record suggests the juror had any relationship, other than knowledge, to his daughter, granddaughter, or Swindler's brother. The juror did not know who Swindler was until it was brought to his attention. The record is silent about whether the juror had some meaningful ties to Swindler's family. Even presuming so, there is no

indication these relationships would affect the juror's impartiality because the juror did not recognize Swindler. It is equally plausible Swindler had no relationship whatsoever to his niece, the juror's granddaughter. The record does not support Swindler's claims.

Affirmed.