NOT DESIGNATED FOR PUBLICATION

No. 122,958

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEREJE A. GEBREMARIAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed November 19, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HURST, J., and MCANANY, S.J.

PER CURIAM: Dereje A. Gebremariam appeals after he pled no contest to rape and kidnapping. On appeal, Gebremariam contends that the district court erred in denying his presentence motion to withdraw plea. In addition, he contends that the district court should have either appointed a different attorney to represent him at the sentencing hearing or should have granted him a continuance. Finally, he contends that the district court violated his constitutional rights by not requiring the State to prove his criminal history to a jury beyond a reasonable doubt. Finding no reversible error, we affirm Gebremariam's convictions and sentence.

1

On August 12, 2016, the State charged Gebremariam with aggravated kidnapping, rape, and theft. The charges arose from an incident in which the victim and her boyfriend requested an Uber ride from the Power & Light District in Kansas City, Missouri to the hotel they were staying at in Overland Park. Believing that Gebremariam was their Uber driver, the victim and her boyfriend got into the vehicle he was driving. On the way to the hotel, the victim's boyfriend asked Gebremariam to stop at a gas station so he could use the restroom.

After stopping at a gas station, the boyfriend got out of the vehicle and Gebremariam drove away. Over the next several hours, Gebremariam confined the victim in his vehicle and raped her. Although the victim was unconscious for much of the time, she regained consciousness and managed to identify a sign for Children's Mercy Hospital South near I-435 in Overland Park—which was only a few minutes away from her hotel. The victim was later able to identify Gebremariam from a photo lineup and also identified him at the preliminary hearing. Also, DNA samples were collected that linked Gebremariam to the crime.

Over the course of the next three years, Gebremariam was represented by counsel and personally participated in several court hearings. On August 15, 2019—which was the Thursday before trial was scheduled to start on Monday the next week— Gebremariam entered into a plea agreement with the State in which the parties agreed that he would plea no contest to kidnapping and rape. The parties also agreed that Gebremariam should be sentenced to the highest end of the sentencing range in the appropriate grid box for the rape under the Kansas Sentencing Guidelines. The parties also agreed to recommend to the district court that the sentence on the kidnapping conviction would run concurrent to the rape sentence.

At the plea hearing, the district court conducted a comprehensive colloquy with Gebremariam regarding his legal rights as well as the voluntariness of his plea. Gebremariam repeatedly represented to the district court that he understood his rights and that he wanted to enter the no-contest plea. Although he answered most of the questions asked by the district court in one or two word answers, Gebremariam never indicated that he did not understand the district court's questions. Likewise, he never requested an interpreter, nor did he request a continuance of the plea hearing.

At one point, Gebremariam said that a no-contest plea means that "I agree, but I'm tired of me being here." The district court then explained to him the legal meaning of the term. The district court also asked Gebremariam a series of follow up questions to verify his understanding:

> "THE COURT:  Let me ask you this, Mr. Gebremariam:  Your choices are pleading not guilty and going to trial that we're scheduled for on Monday; pleading guilty, which is admitting the nature of the charge against you; and this third option of no-contest is where you are not contesting or you're not challenging the facts that the State would present at trial. What that means is you're not admitting guilt, but you're also stating that you're not offering any defense to what the State would present.
>
> "And as we go through this, later on in this proceeding here I'm going to ask the prosecutors to give a factual basis for your plea. When I come back to you, I'll ask if you agree that the State could present that evidence if the case went to trial, not whether you agree with it, but just whether or not you admit that, you know, they have this evidence and they would present it.
>
> "If you are stating no-contest and that means you're not contesting and you're not saying– I'm not going to have a defense, I'm not going to try to counter that in any way.
>
> "If that's the case, if that's what you want to do, then I would consider both everything I know from the court file up to this point in time, as well as the factual basis from the State, and at the end of that, if the evidence that they're presenting is such that you would

be found or considered to be beyond a reasonable doubt to have committed these two crimes and you're not offering any defense to it, most likely I'm going to find you're guilty of those two charges even though you haven't admitted that.

"Do you understand that?

"THE DEFENDANT:  Yes.

"THE COURT:  Does that make sense as far as what a no-contest plea would be?

"THE DEFENDANT:  Uh-huh, yes.

"THE COURT:  Okay. If at any time you have any questions about it, you can ask me, you can ask Ms. Durrett as we go through this, but I want to make sure you understand it.

"I know it's been a long time getting to this point for you, and we've had stops and starts throughout and we've had continuances. You've been in custody a long time. I want to make sure that you understand, and this is what you want to do because I am certainly not pressuring you to do this.

"This is something I need to know you're doing freely and voluntar[il]y and that you understand what you're doing. All right?

"THE DEFENDANT:  Yes, sir."

The district court completed the plea colloquy and heard from the State about the factual basis for the charges of kidnapping and rape. After being satisfied with Gebremariam's answers to its questions as well as the factual basis for the charges, the district court found that Gebremariam's no-contest plea was voluntarily and understandingly entered. As a result, the district court found him guilty of the amended charges of kidnapping and rape.

On October 23, 2019, Gebremariam's second attorney filed a motion to withdraw his plea prior to sentencing. In the motion, Gebremariam asserted for the first time that he did not understand his plea because English is not his primary language. Specifically, Gebremariam—who is originally from Ethiopia—alleged that his primary language is Amharic. He admitted that he could understand basic English but asserted that he did not understand the language relating to his plea.

Gebremariam asserted in his motion that his previous attorney coerced him into entering his no-contest plea. He alleged that she told him that he may be viewed poorly if he went to trial because he is not from America. Gebremariam also alleged that his attorney used his family to pressure him into entering a plea agreement the night before the hearing. Finally, Gebremariam alleged that he felt he did not have a choice to reject the plea agreement because he felt that his attorney was not prepared for trial.

On February 4, 2020, the district court held a hearing on Gebremariam's motion. Before the hearing, the district court retained an Amharic interpreter to assist Gebremariam at the hearing on his motion to withdraw plea. At the hearing, Gebremariam claimed that he had a limited understanding of English and testified that he often had trouble understanding the court's questions. In particular, Gebremariam testified—primarily in English—as follows:

"Q: [MR. BILLAM] There are times when you talk to me and you don't use the interpreter; right?

"A: Yes.

"Q: And when we talk, it's very conversational?

"A: A little bit. I mean, sometimes I don't understand but other times I do.

5

"Q: And when you don't understand when we're talking, what do you do?

"A: I ask for repetition and explanation.

"Q: And sometimes we need to talk back and forth two, three, four times; right?

"A: Yes.

"Q: When you speak to me in English, do you try and use small words to try and get your point across?

"A: Yes.

. . . .

"Q: Is there a difference between your conversations with me in private and being in the courtroom?

"A: Very much.

"Q: How is it different to be in the courtroom?

"THE INTERPRETER: In the court, the language is much low and it has a speed so he has difficulty understanding."

When asked why he did not tell the district court that he had trouble understanding at the plea hearing, Gebremariam claimed that he did not have a chance to do so and that he felt pressured to answer in the way that his attorney told him to respond. Likewise, on cross-examination, Gebremariam testified as follows:

"Q: . . . You were asked on numerous occasions 'do you understand' after Judge recited several rights that you were giving up.

. . . .

"A:  Partly.

"Q:  If I told you that every single time you were asked by Judge in English, you responded, 'Yes I understand.'

"A:  Yes.

"Q:  No reason to dispute that?

"A:  I was fearful at the time and the lawyer was my side, so whatever she wants me to say I say."

When asked about his claim that his attorney forced him into pleading no contest, Gebremariam testified:

"A:  Yeah. She threatened me and coerced me to accept.

"Q:  How did she threaten you?

"A:  Such as you will face 32 years and you are black. The jury will not side with you. The victim is from here. And so he's from Africa.

"Q:  Is there anything else?

        "THE INTERPRETER:  When she presented the plea, it was so brief, and he did not quite understand."

As for his assertion that his attorney was not ready for trial, Gebremariam testified:

"Q:  Did you feel as though Ms. Durrett was ready for trial?

7

"A: By ready, do you mean she was in a hurry kind of?

"Q: No, was she prepared?

"A: No.

"Q: Why don't you believe she was prepared for your trial if that was your only other option besides the plea?

"A: She has never come and discussed my case.

"Q: Any other reasons?

"A: Every time I asked her my case, she's like a stranger to the case.

"Q: Did you feel she was preoccupied with other things besides the case?

"A: Very much so.

. . . .

"Q: So you don't believe she was ready to start your trial?

"A: Yes.

"Q: Is that why you took the plea?

"A: The plea before?

"Q: Yes.

"A: Yes. Yes.

"Q: Explain to the Court how you felt when you were told there were no more continuances so if you didn't take the plea you would go to trial.

"A: It was so scary like anybody could be. The choice is only two, anybody would take the choice I took because of lack of choice."

At the end of the motion hearing, the district court determined that Gebremariam had not shown "good cause" to withdraw his plea. In particular, the district court found that Gebremariam understood sufficient English to understand his rights and to voluntarily enter his plea. The district court noted in support of its conclusion that Gebremariam had participated in numerous court hearings in the three years between his arrest and the entry of his plea. The district court also noted that these hearings were before the same judge and that Gebremariam had not previously requested an interpreter.

Specifically, the district court found:

"[THE COURT] . . . [T]here was no request by the defendant for an interpreter until the intention of Mr. Gebremariam to withdraw his plea was made at the time of the scheduled sentencing hearing. I have been well aware that Mr. Gebremariam speaks what would be termed as, quote, 'broken English,' closed quote, and that the English language is not his primary language for communicating.

"But I will also note that the Court always stands ready to provide an interpreter when there is any, and emphasize 'any,' indication that a defendant does not understand the spoken language utilized in court. Once requested by Mr. Gebremariam, the Court has provided an interpreter for him.

"With this issue of language barrier as an issue to withdraw his plea, I will note that Mr. Gebremariam has interacted, albeit in a limited fashion, with myself here in court at more than 20 different appearances. During those appearances, there has been testimony presented at court hearings, and Mr. Gebremariam did not request an interpreter for the testimony and the statements of attorneys, all of which were in English.

9

"Further, Mr. Gebremariam, after—in all of the hearings after his arraignment, was specifically asked by myself whether he understood that continuances rather than setting the case for trial would impact his speedy trial rights under the law. Mr. Gebremariam answered on each occasion that he understood the continuances at his request would not count for the days in which he must be brought to trial.

"One further indication of Mr. Gebremariam's understanding of the English language is the entirety of that plea hearing transcript in which he entered no contest pleas which necessarily includes an explanation of what a no contest plea means.

"While counsel has highlighted his comments that he was tired when asked about the no contest plea and Ms. Durrett's assistance in attempting to understand the concept of a no contest plea—

. . . .

" . . . that Mr. Gebremariam answered all the specific questions posed to him by the Court, that he understood both the nature of the proceedings and the impact of his no contest pleas.

. . . .

"I'll also note one other hearing in the court's file which was a pretrial hearing . . . in which I ruled on various motions filed by the State and the defendant. When making those specific rulings on admissibility of evidence for the trial, Mr. Gebremariam did not voice any indication that he did not understand the nature of those rulings and the—or request any explanation from the Court or from counsel in the course of the hearing.

"Mr. Gebremariam is able to understand some English, quite a bit of English, but understandably has difficulty with both the speed at which people speak in this public setting as well as the terminology used both colloquially in the American English language and the legal terminology.

10

"From all of these findings that I have been listing here as to any claim of misunderstanding or lack of understanding by Mr. Gebremariam of the English language, I do not find that there is a basis to set aside his plea on those claims, and I will grant the State's motion for failing to meet his burden of proof on that issue."

Further, the district court determined that Gebremariam had not presented sufficient evidence to establish that his first attorney had coerced him into entering his plea. For these reasons, the district court denied Gebremariam's motion to withdraw plea and set the matter for sentencing.

Following the hearing on his motion to withdraw plea, Gebremariam filed three pro se motions. In each of the motions, he asked to replace the second attorney who represented him on his motion to withdraw plea. He also complained about the interpreter retained to assist him at the hearing on his motion to withdraw plea and suggested that the translation was not accurate.

On March 10, 2020, the district court held a sentencing hearing at which a different interpreter was retained to assist with translation. At the outset, the district court addressed Gebremariam's pending pro se motions. Gebremariam's second attorney told the district court that Gebremariam's family had purportedly located an Amharic-speaking attorney in St. Louis who could represent him. But when the district court asked Gebremariam about the attorney, Gebremariam could not identify the attorney's name or other pertinent information. Gebremariam also stated that he had not personally spoken to the attorney about representing him.

Next, the district court asked Gebremariam about the alleged difficulties he had with the interpreter who was retained to assist him at the motion to withdraw plea hearing. In response, Gebremariam suggested that although the interpreter spoke Amharic, the interpreter was not fluent because it was his second language.

11

Ultimately, the district court denied Gebremariam's pro se motions. In so doing, the district court explained:

"This pro se motion, . . . does not raise any additional issues that have not already been addressed by the Court with the exception of the request for an Amharic-speaking lawyer to represent him.

"That ties into Mr. Gebremariam's two similar motions to discharge counsel, one that was not signed but filed with the court, the other being signed. In that request to discharge Mr. Billam, the same issues that were addressed in the motion to withdraw plea hearing are raised again and do not raise to the level of a basis to discharge Mr. Billam, Mr. Billam indicating that he does not believe there is conflict in his representation for Mr. Gebremariam.

"The remaining issue of requesting to have his own retained counsel to represent him at this hearing here today is that the defendant does not provide any specific information on who this attorney is or in fact that he or she has been retained by Mr. Gebremariam or his family members to represent him at this juncture in the case.

"The defendant's motion to discharge Mr. Billam is considered and denied. We will proceed with sentencing today."

The district court then proceeded to the sentencing portion of the hearing. After hearing from Gebremariam's attorney and the State and after reviewing the presentence report, the district court sentenced Gebremariam to 203 months in prison for the rape conviction and 61 months in prison for the kidnapping conviction, which was the sentence recommended by the parties to the plea agreement. Following the plea agreement, the district court ran the convictions concurrent rather than consecutive. Thereafter, Gebremariam filed a timely notice of appeal.

12

*Motion to Withdraw Plea*

Gebremariam contends that the district court abused its discretion by denying his presentence motion to withdraw his plea. K.S.A. 2020 Supp. 22-3210(d)(1) grants a district court the discretion to allow a defendant to withdraw a guilty or no-contest plea prior to sentencing if good cause is shown. The decision to grant or deny a motion to withdraw a plea lies within the discretion of the district court. *State v. Green*, 283 Kan. 531, 545, 153 P.3d 1216 (2007). On appeal, a defendant challenging a district court's denial of a motion to withdraw plea—in this case Gebremariam—must establish that the district court abused its discretion in reaching that decision. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). A judicial action constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

As a general rule, the three nonexclusive factors set forth in *State v. Edgar*, 281 Kan. 30, Syl. ¶ 2, 127 P.3d 986 (2006)—known as the *Edgar* factors—should guide a district court's consideration of whether a defendant has established the good cause required by K.S.A. 2020 Supp. 22-3210(d)(1). These factors are: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. Here, Gebremariam's appeal focuses on the second and third *Edgar* factors. Specifically, Gebremariam contends that he was coerced into entering his plea and that he did not understand his plea based on a language barrier.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects defendants in criminal cases by requiring that any plea be knowingly and voluntarily made. *Brady v. United States*, 397 U.S. 742, 755-56, 90 S. Ct.

1463, 25 L. Ed. 2d 747 (1970). As part of this protection, a court considering a defendant's plea of guilty or no contest must inform the defendant of the direct consequences of his or her plea. 397 U.S. at 755-57. In addition, the record must affirmatively disclose that the defendant understands the potential consequences of the plea and still chooses to plead guilty or no contest. See *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006).

K.S.A. 2020 Supp. 22-3210 was enacted to ensure compliance with these elements of due process. *Beauclair*, 281 Kan. at 237. Under this statute, a district court considering a defendant's plea must determine on the record that the defendant enters his or her plea voluntarily and with an understanding of its consequences 281 Kan. at 237. K.S.A. 2020 Supp. 22-3210(a)(2) requires a district court to inform "the defendant of the consequences of the plea, including the specific sentencing guidelines level . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea . . . ."

Similarly, "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his or her trial." *State v. Calderon*, 270 Kan. 241, 245, 13 P.3d 871 (2000). "Moreover, the right to be 'present' encompasses more than a defendant's mere physical appearance at critical stages. It assumes the defendant 'will be informed about the proceedings so he or she can assist in the defense.'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 488, 486 P.3d 1216 (2021) (quoting *Calderon*, 270 Kan. at 245)."'A defendant's right to be present includes a right to have trial proceedings translated into a language that he or she understands so that he or she can participate effectively in his or her own defense.'" 313 Kan. at 488 (quoting *Calderon*, 270 Kan. at 245).

In *Khalil-Alsalaami*, the Kansas Supreme Court explained the due process implications related to a criminal defendant's access to an interpreter in the context of a

14

K.S.A. 60-1507 motion. *Khalil-Alsalaami*, 313 Kan. at 488-92. In deciding if a district court abused its discretion in denying a motion to withdraw plea based on an alleged failure to sufficiently understand the English language, we must first examine the record to determine if there is substantial competent evidence to support the district court's findings. *Khalil-Alsalaami*, 313 Kan. at 492-93; see also *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016) (noting that an error of fact, sufficient to show that a district court abused its discretion in denying a presentence motion to withdraw plea, is reviewed on appeal based on "substantial competent evidence" standard).

Here, Gebremariam does not contest the district court's finding that he participated in a number of previous court hearings without an interpreter over the course of the three years between his arrest and the entry of his no-contest plea. Likewise, he does not contest the district court's finding that he never advised the court that he did not understand the proceedings nor did he request an interpreter until he sought to withdraw his plea. Further, Gebremariam does not contest the district court's finding that he repeatedly told the district court that he understood his rights and the nature of his plea.

In reviewing the district court's ruling on Gebremariam's motion to withdraw his plea, "we do not reweigh the evidence, resolve conflicts in evidence, or make credibility determinations." *Khalil-Alsalaami*, 313 Kan. at 491. "These functions fall within the exclusive purview of the district court as the finder of fact. On review, the appellate court's duty is limited to deciding whether the district court findings, viewed in the light most favorable to the prevailing party, are supported by substantial competent evidence." 313 Kan. at 491. Based on our review of the record on appeal, we conclude that those findings are sufficient for a reasonable person to conclude that Gebremariam voluntarily and understandingly entered his plea. As a result, we conclude that the district court did not abuse its discretion by concluding that Gebremariam had failed to show that his plea was not understandingly made.

15

In addition, based on our review of the record on appeal, we conclude that there is substantial competent evidence to support the district court's findings on Gebremariam's ability to understand English sufficiently to allow him to understand the proceedings, the terms of the plea agreement, and the nature of his no-contest plea. We also find that a reasonable person could regard the evidence in the record to be sufficient to support the district court's conclusion that Gebremariam did not require the assistance of an interpreter at the plea hearing. Although it is vital that the district court examine such issues carefully, we find that this has been done in this case.

For similar reasons, we are not persuaded by Gebremariam's argument that the district court abused its discretion in determining that he had failed to show that his attorney coerced him into entering his plea. At the hearing on the motion to withdraw, Gebremariam testified that his attorney at the time had coerced him into entering his plea. After hearing the testimony, the district found that it was not credible. Specifically, the district court found:

> "THE COURT: . . . Mr. Gebremariam claims that he was forced or coerced by Ms. Durrett into accepting his plea which would necessarily under his theory mean that he did not voluntarily enter this plea . . .
>
> "From the court file as well as the defendant's motion and the defendant's testimony here today, I do not find that Mr. Gebremariam has shown any facts which would establish good cause to set aside his plea based upon actions or working by Ms. Durrett in the course of her representation for Mr. Gebremariam—
>
> . . . .
>
> " . . . such as the various forms alleged here that she was abusive or demanding that he accept the State's plea offer rather than going to trial.

16

"Mr. Gebremariam's claims . . . that Ms. Durrett never came to discuss his case and was like a stranger to his case [are] unsupported.

. . . .

" . . . [T]he plea hearing transcript and the discussion between myself and Mr. Gebremariam on the voluntariness of and understanding of his plea all of the contentions here that he was coerced or threatened in any way to enter that plea, it was only after the plea and sentencing hearing were imminent that Mr. Gebremariam first indicated that he did not feel Ms. Durrett was ready for trial.

"He also stated in his plea hearing that he was satisfied with the representation provided by Ms. Durrett to that point.

"The defendant has failed to establish any facts individually or taken in conjunction with other facts to show that he was forced, coerced, or threatened to take the plea agreement that he ultimately entered into.

"Based on the lack of any such good cause evidence demonstrated in the defendant's case, I am sustaining the State's motion to deny the motion to withdraw plea."

Once again, we are not to reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. Instead, such issues are firmly within the authority of the district court. *Johnson*, 307 Kan. at 445. Here, the district court's ruling regarding the question of coercion by his attorney was based on its weighing of the evidence as well as on its credibility determinations. See *State v. Macias-Medina*, 293 Kan. 833, 838-39, 268 P.3d 1201 (2012). Certainly, the district court was in a better position to make these findings than an appellate court.

We also recognize that the Kansas Supreme Court has rejected the argument that an attorney coerces a plea by using family members to pressure a defendant into entering a plea. See, e.g., *State v. Denmark-Wagner*, 292 Kan. 870, Syl. ¶ 2, 876-77, 258 P.3d 960

17

(2011). In particular, our Supreme Court has found that "[f]amily pressure to accept a plea agreement does not constitute coercion so as to render a defendant's guilty plea involuntary, when the defendant acknowledges that the decision to enter the plea was ultimately his or her own choice." 292 Kan. 870, Syl. ¶ 2. Here, there is substantial competent evidence to support the district court's determination that it was ultimately Gebremariam who voluntarily made the decision to plea no contest in exchange for having the theft charge dismissed and having the sentences for the remaining charges run concurrent. Thus, we conclude that the district court's findings are supported by substantial competent evidence and that the district court did not abuse its discretion by denying Gebremariam's motion to withdraw plea.

*Motion for Continuance*

Gebremariam also contends that the district court abused its discretion in denying his motion to continue his sentencing so he could retain another attorney. In addition, for the first time on appeal, Gebremariam contends that the district court erred by not appointing conflict-free counsel to represent him at the sentencing hearing. Because the Sixth Amendment to the United States Constitution guarantees the right to conflict-free counsel in a criminal prosecution, we will consider this issue on the merits. See *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012).

On appeal, Gebremariam asserts that a conflict existed with his second attorney who failed to retain an interpreter to help prepare for the hearing on the motion to withdraw plea hearing. Still, Gebremariam does not explain how the lack of an interpreter impacted his attorney's ability to represent him at the hearing. As a result, we find Gebremariam's argument to be abandoned and waived. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). We also note that Gebremariam testified on his own behalf at the hearing on the motion to withdraw plea, that an interpreter was present at the hearing, and the district court relied upon Gebremariam's testimony in issuing its ruling.

18

Gebremariam's primary argument is that the district court erred by not granting his request for a continuance so he could hire an Amharic-speaking attorney. K.S.A. 22-3401 provides a district court may grant a continuance "for good cause shown." The grant or denial of a request for a continuance will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Gentry*, 310 Kan. 715, 734, 449 P.3d 429 (2019); see *State v. Glover*, 50 Kan. App. 2d 991, 997-98, 336 P.3d 875 (2014), *rev. denied* 302 Kan. 1014 (2015) (discussing meaning of "good cause" in motion to withdraw plea case).

"When a criminal defendant's constitutional right to secure counsel of his or her choice conflicts with the trial judge's discretionary power to deny continuances, the reviewing court must balance several factors in determining whether the trial court's conduct was fair and reasonable." *Johnson*, 304 Kan. 924, Syl. ¶ 12. Those factors are: (1) whether granting a continuance would be inconvenient for witnesses, the court, the attorneys, or the parties; (2) whether the court has granted other continuances; (3) whether the defendant has established legitimate reasons for the delay; (4) whether the delay is the defendant's fault; and (5) whether the denial of the continuance would result in prejudice to the defendant. 304 Kan. at 945-46.

Although his case had been pending for nearly three and a half years, Gebremariam did not make his request to retain an Amharic-speaking attorney to the district court until shortly before the sentencing hearing. The district court asked Gebremariam several questions about the attorney that he allegedly wanted to hire. Yet Gebremariam did not know the name of the attorney and could not even identify where the attorney's law practice was located. Moreover, Gebremariam admitted that he had not talked to the attorney about representing him.

After inquiring of Gebremariam, the district court found:

19

"This pro se motion, . . . does not raise any additional issues that have not already been addressed by the Court with the exception of the request for an Amharic-speaking lawyer to represent him.

"That ties into Mr. Gebremariam's two similar motions to discharge counsel, one that was not signed but filed with the court, the other being signed. In that request to discharge Mr. Billam the same issues that were addressed in the motion to withdraw plea hearing are raised again and do not [rise] to the level of a basis to discharge Mr. Billam, Mr. Billam indicating that he does not believe there is conflict in his representation for Mr. Gebremariam.

"The remaining issue of requesting to have his own retained counsel to represent him at this hearing here today is that the defendant does not provide any specific information on who this attorney is or in fact that he or she has been retained by Mr. Gebremariam or his family members to represent him at this juncture in the case.

"The defendant's motion to discharge Mr. Billam is considered and denied. We will proceed with sentencing today."

Under these circumstances, we do not find that the district court abused its discretion in denying Gebremariam's motion for a continuance.

*Criminal History*

Finally, Gebremariam argues that the district court violated his constitutional rights by using his prior convictions to determine his sentence without first requiring the State to prove his criminal history beyond a reasonable doubt. Notably, Gebremariam candidly acknowledges that the Kansas Supreme Court has rejected his argument that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), requires his criminal history be determined by a jury beyond a reasonable doubt. In particular, he recognizes that this issue was decided by our Supreme Court in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). As a result, because there is no indication

20

that our Supreme Court is departing from its earlier position in *Ivory*, we must follow that precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

Affirmed.